No. 5534.

THOMAS C. CLARK v. W. S. HILLS ET AL.

1. ACTS OF OFFICERS OF FORMER GOVERNMENT—MEXICAN GRANT—PRESUMPTION.—The doctrine announced in Johns v. Schulz, 47 Texas, 578, that it will be presumed the acts of officers of a former government are within and not in excess of their authority; that this presumption, in connection with an undisturbed possession of over forty years, more than twenty of which elapsed while the land to which such officers assumed to extend title was subject to the jurisdiction from which the grant emanated, are sufficient to establish prima facie the validity of a grant, followed.

2. JURISDICTION — TREATY OF GUADALUPE HIDALGO. — Though Texas claimed jurisdiction extending to the Rio Grande river as early as December 19, 1836, such jurisdiction was never admitted by Mexico until the treaty of Guadalupe Hidalgo in 1848, and until 1848 the State of Chihuahua exercised jurisdiction over the territory of Texas bordering the upper Rio Grande, and embracing the city of El Paso.

3. CONFIRMATION OF MEXICAN GRANT.—The Act of February 11, 1858, which relinquished all the right of the State in designated land on the Rio Grande river to Juan Maria Ponce de Leon, thereby intended to recognize the validity of the Mexican grant formerly made to him, and to pass all the title of the State as effectually as if it were making a grant *de novo*, and the State thereby confirmed the right and title of the grantee to the extent of the boundaries set forth in his title papers.

4. SAME.—The relinquishment of title declared by that Act was not limited or impaired by the second section of the Act requiring a survey to be made of the land.

5. BURDEN OF PROOF.—The burden of proof remains on the party affirming a fact in support of his case, and does not change in any aspect of the cause, though the weight of evidence may shift from side to side according to the nature and strength of the proof offered in support or denial of the main fact to be established.

6. CASES APPROVED.—Burnham v. Allen, 1 Gray, 495 ; Delano v. Bartlett, 6 Cushman, 364 ; Panns v. Russell, 13 Pickering, 77; Wall v. Hill's Heirs, 1

B. Monroe, 290, and Caldwell v. New Jersey St. Co., 47 New York, 282, approved.

7. VERDICT.—See this case for a verdict in trespass to try title, based on a disability of the jury to agree on the lines of the plaintiff's survey on the ground, which disability was stated in a verdict for the defendant, and held not to be invalid.

8. GENERAL REPUTATION.—General reputation in regard to the boundary lines of an ancient survey, formed long before the suit in which it is offered in evidence was begun, and which boundary was of sufficient interest to have been the subject of note and comment in the neighborhood, is admissible in evidence.

APPEAL from El Paso. Tried below before the Hon. T. A. Falvey.

*Goodrich & Clarkson*, for appellant, on their proposition that the court erred in submitting to the jury any question as to an actual survey and location of the lines of the Ponce grant at or previous to the date of said grant, because, first, there was no evidence of such actual survey by any witness who was present, nor was there any proof of tradition, hearsay or general reputation of such survey, or of the location of any natural or artificial object designated or known as the boundary of said grant; second, because the said alleged grant to Ponce De Leon by the authorities of the State of Chihuahua, in 1827, was void for want of authority or title in the grantor, and did not have the effect to sever from the public domain of Texas the land therein described, or any other land, and said Act of the legislature of Texas did not confirm any alleged survey or right resting on partial testimony or tradition, cited Hancock v. Horan, 15 Texas, 511; Linn v. Scott, 3 Texas, 67; Jones v. Menard, 1 Texas, 787; Todd v. Fisher, 26 Texas, 241.

The Rio Grande river was the boundary between Texas and the State of Chihuahua. See Act of December 19, 1836; Paschal's Digest, Article 438; Chambers v. Fisk, 22 Texas, 504; see Article 15, Constitution of Coahuila and Texas; see also Colonization Law of March 1825, and Articles 547, 548 of said law; Paschal's Digest, 212, 210, note 354; Jones v. Garza, 11 Texas, 208.

*Davis & Beall, W. B. Black* and *C. Q. Stanton*, for appellees, on their proposition that the grant to Ponce de Leon was a valid grant, cited Johns v. Schutz, 47 Texas, 582; State v. Sais, 47 Texas, 309, 310, 314; State v. Bustamente, 47 Texas, 322.

That the legislative confirmation operated as a grant; that it related back and confirmed the same according to its original bounds, they cited The State v. Sais, 47 Texas, 311; Bryan v. Carter, 3 Otto, 82; Langdeau v. Hanes, 21 Wallace, 529; Morrow v. Whitney, 5 Otto, 554, 555.

On the charge of court and burden of proof, they cited Stroud v. Springfield, 28 Texas, 671–673; Wall v. Hill's Heirs, 1 B. Monroe, 295, same case, 36 American Decisions, 578; Small v. Clewley, 16 American Reports, 410; Delano v. Bartlett, 6 Cushing, 367; Burnham v. Allen, 1 Gray, 501; Powers v. Russell, 13 Pickering, 76; Rules District Court, 66, 67; Wiggins v. Flieshel, 50 Texas, 65.

That the verdict was sufficient to support the judgment, they cited Town of Refugio v. Byrne, 25 Texas, 198; Hamilton v. Rice, 15 Texas, 384; Wiggins v. Flieshel, 50 Texas, 65; Rules District Court, 66, 67.

WILLIE, CHIEF JUSTICE. This is an action of trespass to try title to lot number nineteen, in block number four, the south half of block number ten, block forty and block forty-one, all situated in the city of El Paso. The suit was brought by the appellant, who claims title under a location and survey made by virtue of a bounty warrant, on the twelfth day of November, 1872, against the appellees, who claim under a Mexican grant made to Juan Maria Ponce de Leon, on September 27, 1827, and under an act of the legislature confirming this grant—approved February 11, 1858. The grant to De Leon was made by the ayuntamiento of El Paso del Norte, in accordance with the direction of the governor of the State of Chihuahua, and describes the land as follows:

"The survey began where the new ditch cuts the one excavated by Francisco Xavier Bernal, deceased, at the point of a hill, where I ordered placed a monument of lime and rock, taking the direction of west to east along the north side. He had one caballeria, and the north measurement was changed, five hundred and thirty-five varas were added on account of the disproportionate triangular form of the land, because at its centre it was only two hundred and twenty-seven varas wide. With this ended the survey of the first caballeria, and the survey of the other continued following the direction of west to east on the north boundary and on the edges of the hills, including all land that could be cultivated, and on the south it is bounded by the river, and has seven hundred and fifty varas with regard to having in-

---

---

creased it two hundred and forty varas, on account of the width which was lacking in the other caballeria."

The Act of February 11, 1858, is entitled "An Act to relinquish the right of the State to certain lands therein named."

The first section relinquished all the right and interest of the State in two caballerias of land called "El Rancho de Ponce," then known as the town of Franklin, to Juan Maria Ponce de Leon. The second section made it the duty of De Leon to have the same surveyed by the district or county surveyor of El Paso county, which survey should in all respects conform to the metes and bounds designated in the original grant; and upon the return of the field notes to the General Land Office, the Commissioner was authorized and required to have the same plotted on the proper map in his office, and issue patents for the same in accordance with existing laws. The third section provided that the confirmation thus extended should not interfere with the rights of third parties accruing before the passage of the Act.

The appellant, who was plaintiff below, contends that the appellees have no right to the De Leon tract of land, except so far as they can claim it through the foregoing Act of the legislature. He asserts that the Mexican title is void upon its face, having been issued for land in Texas by the city of Paso del Norte, in the State of Chihuahua. We regard this question as settled in the case of Johns v. Schutz, 47 Texas, 578—a decision upon the very grant now in controversy before this court. It was there said that it will be presumed that the acts of officers of a former government are within, and not in excess of their authority. "This presumption," it was said, "in connection with an undisturbed possession of about forty-five years, more than twenty of which elapsed whilst the land in question was subject to the jurisdiction from which the grant emanated, are quite sufficient to establish prima facie the validity of the grant." The possession in this case was shown to have been as long continued as it was in that, and under similar circumstances, and we see no reason why the principle announced in that case should not be enforced in this.

That the grant proceeded from the ayuntamiento of Paso del Norte, in the State of Chihuahua, was held not to vitiate it. The court presumed that this body had power to make it, in absence of proof to the contrary, of which there is none in the present case. That the land was within the territory declared by our State, on December 19, 1836, to be subject to her jurisdiction, was

not considered a matter of sufficient importance to deserve attention. It is true that, on the date last mentioned, Texas, in defining her boundaries, claimed civil and political jurisdiction to the Rio Grande river; but this jurisdiction was never acknowledged by Mexico till the treaty of Guadalupe Hidalgo, in 1848.

The State of Chihuahua exercised jurisdiction over the territory comprising the De Leon grant not only till December 19, 1836, but till it was ceded by the treaty above mentioned. By the eighth article of that treaty, the property rights of Mexicans within the territory thus ceded was guaranteed by the United States, and they were to be protected in its enjoyment to the same extent as if it belonged to citizens of the United States.

Accordingly, our legislature has enacted statutes providing for the protection of these titles, even where they had not been perfected under the Mexican government. Commissioners have been appointed to investigate them as a preliminary step to their confirmation, and the courts of the country have been thrown open for their establishment. The legislature, perhaps on account of the meritorious character of the present title and the long continued possession of its owners, confirmed it by statute, without requiring further proof than that body had before it of the justice of the claim. The clear object of the statute was to recognize the validity of the Mexican grant, and to pass all the title of the State as effectually as if it were making a grant *de novo;* and it confirmed *proprio vigore* the right and title of the grantee to the extent of the boundaries set forth in his title papers. (Ryan v. Carter, 103 U. S., 82.)

That this relinquishment by the State was a confirmation of the grantee's claim is shown by the Act itself, for in the third section it is styled a confirmation; and the rights of third parties accruing before the passage of the Act, are saved and protected. Unless the right of some third party had already accrued, the State alone could take advantage of any defect in De Leon's title to the land described in his grant. This right the State relinquished and quit claimed to the grantee and those claiming under him, thereby rendering their title perfect as against the State, and all persons claiming under it, by title subsequently acquired. This brings the action of the legislature precisely within the definition of a confirmation as accepted and recognized, and the Act can not be construed otherwise than as having that effect. (See Langdeau v. Hanes, 21 Wall., 529.)

This confirmation was not limited or impaired by the provis-

ions of the second section in reference to a survey of the land. The survey and patent were required to secure certainty in the description of the land, and furnish the owners with the highest evidence of the validity of their claim to the extent of the boundaries described in the patent. These, according to the statute, were to be the same as those contained in the original grant, and to include precisely the same land granted by the Mexican authorities. The patent would be the highest evidence as to this, but in case no patent thereafter issued, or survey was made, the right of the grantee or his assigns was not lost, but they were forced to bring other proof as to the location of the boundaries of the land described in the grant. The survey was of use to the State also, as by it the metes and bounds of the land would be so well defined as to show with certainty what land, by reason of this grant, was not subject to future appropriation. But if this had been a matter of vital importance, the legislature would doubtless have required the survey and return of field notes to be made within a limited time, or would have declared the land forfeited unless the survey was made.

In cases where the grant of a former government is confirmed, the survey becomes important only when the land has not been previously surveyed, so as to segregate it from adjoining territory, or when the description of the land is so vague as to require a survey to designate and fix its boundaries with certainty.

The former was the case in Waterman v. Smith, 13 California, 373, cited by the appellant. To each of the persons under whom the parties claimed, a grant had been made of a quantity of land to be taken out of a large tract without giving the boundaries of the land conveyed, or the means by which they could be determined. The court, in that case, properly held that the party who had first complied-with the confirmatory act by having his land surveyed and obtaining a patent, had the better title to the land included in the survey, though the grant of his adversary was older in date. In West v. Cochran, 17 Howard, 403, it seems from the opinion of the court that the confirmatory Act declared that where tracts of land had not been previously surveyed they should be surveyed, and a patent be issued upon these surveys to the interested parties. In that case it was held that the description of the land contained in the patent was binding upon the patentee, because previous to the survey his claim was unlocated and vague, and he could not claim that his original grant covered a different tract of land.

These decisions are in accord with the views already expressed by us, for in neither case had the land, at the date of the confirmation, been severed by survey from the public domain.   The present case is analagous to those subsequently decided by the Supreme Court of the United States, where the general principle, which we think correct, is distinctly announced, that when the tract confirmed appears to have clearly defined boundaries, or to have been capable of identification, the confirmation·perfects the plaintiff's title, and a subsequent patent would only seem as documentary evidence of that title.   (Morrow v. Whitney, 95 U. S., 554; Langdeau v. Hanes, *supra*.) The provisions of section eight, article fourteen, of our present Constitution did not apply to the present land, but to such as lay between the Nueces and Rio Grande, and the titles to which had been validated by certain acts applicable to the owners of land there situated.

We think therefore that the title of the defendants to the land described in the grant to De Leon was valid under that grant as confirmed by the legislature of the State.

The plaintiff alleged that he had good title to the land in controversy by virtue of a location upon it of an unlocated balance of the Calder bounty warrant, and of a valid survey by the proper officer.   The defendants, by their plea of not guilty, denied these allegations and put the plaintiff upon proof of his case as made by the petition.   The onus was therefore upon the plaintiff to prove all these allegations, including the fact that the warrant was located on vacant land, and, under the evidence developed at the trial, the land was vacant if not covered by the De Leon grant.   In support of his case upon this question, he showed a regular location of his bounty warrant upon the land and a regular survey of the same by the proper officer.   This made for him a prima facie case that the land was vacant and outside of the Ponce boundaries, and with this proof the plaintiff rested.   Had no further evidence on the subject been introduced, the plaintiff would have been entitled .to a verdict, for the presumption was that the surveyor had not located and surveyed for the plaintiff land within an older grant.   But the defendants, in rebuttal of the plaintiff's prima facie case, put in evidence facts tending to show that the land was not vacant at the date of location, but was covered by the De Leon grant.   The plaintiff, to sustain the prima facie case made by him, produced evidence tending to show that the land was not within the limits of the De Leon grant, and hence was subject to his location.

Under this state of case the court charged the jury that the· burden of proof was upon the plaintiff, and that if they believed from the evidence that the land in controversy was not within the limits of the DeLeon grant, they would find for the plaintiff; but if they found it to be within the grant they would find for the defendants, whether they found the exact location of the boundaries of said grant or not.   The jury returned the following verdict:

" Under the instructions in the charge of the court to jury, that the burden of proof in this case is upon the plaintiff, and not being able to agree upon the location upon the ground or the lines of the Ponce grant as defined in the original field notes, agree upon a verdict for the defendants."

The appellant complains that the court, having in effect charged that he had made out a prima facie case by proving his location and survey, erred in charging that the burden was upon him to show that the land was without *De Leon's* lines.   He further claims that the jury, being misled as to where the burden of proof lay, found for the defendant upon a state of facts which did not entitle them to a verdict.   The whole question turns upon whether or not the burden of proving the land vacant, and without the Ponce lines, which originally rested with the plaintiff, was shifted to the defendant when plaintiffs had made out a prima facie case upon the question.   The general rule is that the burden of proof "remains on a party offering a fact in support· of his case, and does not change in any aspect of the cause; though the weight of evidence may shift from side to side, according to the nature and strength of the proof offered in support or denial of the main fact to be established." (Central Bridge Corporation v. Butler, 2 Gray, 132; Blanchard v. Young, 11 Cushing, 345; Spaulding v. Hood, 8 Cushing, 605.)

Thus, in a suit upon a note, the burden of proving the consideration of the note was held to be on the plaintiff, and that he· made a prima facie case by putting the note in evidence, which purported to have been given for value received; but it was further held that this did not shift the burden of proof as to consideration to the defendant, but the plaintiff retained it throughout the investigation of that fact.   (Burnham v. Allen, 1 Gray, 496;. Delano v. Bartlett, 6 Cushing, 364.)

"Prima facie evidence is given of the execution and delivery of a deed; contrary evidence is given on the other side, tending to negative such fact of delivery; this latter is met by other

evidence, and so on through a long inquiry. The burden of proof has not shifted, though the weight of evidence may have shifted frequently; it rests on the party who originally took it." (Powers v. Russell, 13 Pickering, 77.

An heir sues to recover land alleged to have been sold by his ancestor whilst insane. The inquisition declaring the grantor a lunatic, together with the concurrent statements of witnesses, makes out a prima facie case of insanity. Proof of the sanity of the grantor is produced on the other side. The court holds the burden of proof on the question rests with the plaintiff to the end of the cause. (Wall v. Hill's Heirs, 1 B. Mon., 290. See another example in Caldwell v. N. J. St. Co., 47 N. Y., 382.)

The same rule holds in reference to defendants, when they set up an independent fact by way of confession and avoidance. Thus they admit the plaintiff's case, and as to such fact assume the onus probandi. As in an action of debt, when the defendant pleads payment, accord and satisfaction, a discharge in bankruptcy, etc. As to these pleas, the onus is upon him, though it still rests upon the plaintiff as to the allegation upon which he seeks a recovery. So in the present case, upon the plea of limitation, the burden rested with the defendants throughout the cause, because they involved an admission of the plaintiff's case, and an assumption of the burden of showing reasons why it should not prevail against the defendants. Whilst the party having the affirmative of an issue holds the burden of proof, as a general rule, it is not necessary that the issue should always be presented in an affirmative form. (1 Greenl. on Ev., sec. 74.) If this were requisite, a mere change in the form of the issue would change the burden of proof, without regard to the substance and effect of the issue. Much less does the fact that a defendant is forced to maintain the affirmative of some fact, in disproving the plaintiff's case, shift upon him the burden of proof. Hence the onus probandi in this case was not affected by the fact that, in showing the land to have been vacant at the date of the plaintiff's location, he had to prove that it was not within the lines of the Ponce grant; and the defendant met the issue by proof that it was embraced within the lines of that grant. That a party does not shift to his adversary the burden of proof by making out a prima facie case is clear from what we have said, and is a well settled principle. (Blanchard v. Young, 11 Cushing, 345, and other authorities cited above.)

His case must be disproved, but when proof having this ten-

dency is produced, it then becomes a question whether upon the whole evidence the prima facie case has been successfully met by the adverse party. If it appears that the preponderance of testimony is not in favor of the party having the onus, the verdict should be against him. If the testimony is evenly balanced, he has failed to establish the issue, but has left it doubtful whether he has sustained it or not, and that doubt must inure to the benefit of his adversary.

Applying these principles to the case before us, we find the charge of the court correct upon the subject of the burden of proof, and in directing the jury to find for the defendants if the land in controversy was upon the De Leon grant, whether they could locate its boundaries or not. If the jury's verdict is to be treated as in response to this charge and a finding that the De Leon grant covered the land, though they could not agree upon its location, then it is undoubtedly correct, because, if upon the grant at all, it was not subject to the plaintiff's location. If we treat it as a mere finding that the jury were in doubt as to the location of the grant, then they were in doubt as to whether the land was vacant when the bounty warrant was laid upon it, the plaintiff's case was not sustained in their opinion by a preponderance of evidence, and it would seem from what we have said that they might have been justified in finding for the defendants. There are authorities, however, that hold that a party claiming under a doubtful title ought not to succeed against a clear title in another (2 Bibb, 497), and that construction must prevail which is most against a party claiming under an uncertain survey, it being his duty to show and establish his corners. (4 Dana, 324.) This, however, is not a shifting of the burden of the proof as to the vacancy of the land from the plaintiff to the defendant, but a determination as to the fullness and certainty of the evidence required to rebut the plaintiff's prima facie case.

But it is necessary to pause for a consideration of these decisions in their application to the present case. It is perfectly clear that the finding of the jury was a direct response to that portion of the charge of the court to which we have alluded. The court told them to find for the defendants if they could not locate the Ponce grant, but believed the land in dispute was upon it. They were not directed to find for the defendant, whether doubtful or not as to this location, if they were not satisfied that it included the disputed land. The response they gave by their verdict was: "We are not certain as to the locality of the grant, and we therefore

find for the defendants." As it was their duty to obey the judge's charge, we must presume, if their verdict can be so construed, that they gave their verdict under the circumstances stated by them only because they believed the land to be within the Ponce grant. That they may have been doubtful as to the locality of the grant, and yet believed that it included the land in ‧ dispute, is apparent from the fact that the evidence left it uncertain as to whether the Mills line or the Villars line was the northern boundary of the grant, but either of them was above the land in controversy. These lines were but ninety varas apart. That one or the other of them was the true north line of the Ponce grant was supported by the overwhelming weight of testimony. That the grant was to run along the foot of the hills, and include all cultivable land, was held by this court in Johns v. Schutz, supra, to be such a call for natural objects as would control corners and distances. By running the north line as called for in either the Mills or Villars survey, these calls of the survey would be complied with; by running them as claimed by the plaintiff, they would not.

In running the lines as Mills did, an artificial land mark was found at or near the third corner as called for in the original grant. If the expert who translated the Mexican grant was correct in explaining the words used to describe the causes and distances of its lines (and it seems that he was) these accorded with the natural objects in fixing either the Mills or Villars line on the north boundary of the survey. This evidence was strengthened and confirmed by the long possession of Ponce up to the foot of the hills as claimed by defendants from the date of the grant till his death, and by his heirs and those claiming under them down to the commencement of the suit.

By this testimony and numerous additional facts not successfully controverted by the plaintiff, the northern line was so clearly shown to have been above the land in dispute, that had the jury found to the contrary, their verdict should have been set aside by the court. We can but conclude, therefore, that the only doubt upon their minds was as to which of the two surveys, that made by Mills or that made by Villars was the correct one, and therefore that they believed the land in dispute to be covered by the Ponce grant, and for that reason, as charged by the court, they found for the defendants.

What we have said shows the correctness of the court's

charge to the effect that course and distance must yield to such natural objects as we have seen were called for in the grant.

There was no error in submitting to the jury the question of an actual survey of the land. The grant contains what purports to have been an actual survey, and from this the law would presume that it was actually made. Besides there was some proof that land marks in accordance with the calls of the grant had been found in their proper places.

In fact the charge seems clear and in accordance with the law of the case, and we are pointed to no valid objection to the manner in which the case was put to the jury by the court. The only objection taken in this court to the admission of the Mills and Diffendorffer surveys, except such as we have already disposed of, is that they appear on their face not to conform to the metes and bounds designated in the grant. It is true that taken without any explanation, some of the corners and lines do not seem to be described as they are in the original grant; but the testimony of Mills fully explained how this discrepancy arose, and showed that he ran the main line in dispute, the northern one, in conformity with the same line described in the grant so far as he could obtain information from the grant itself, and from the land marks which still existed, and from general reputation. The admission of the surveys under these circumstances was not improper.

It is claimed that neither this witness nor the witness Magoffin should have been allowed to testify as to the general reputation in regard to the boundary lines of the survey. These boundaries were ancient, and their locality seems to have been a matter of sufficient interest in the neighborhood to have been the subject of observation and conversation among the people. The witness stated the reputation to have been general, and it clearly appeared that it was formed before this controversy was begun. These witnesses distinctly stated that general reputation, at or about the time Mills made his survey, fixed the northern line of the Ponce grant at the place where Mills had run it. Upon their cross examination nothing was developed which tended to show that this reputation was not general, or did not fulfil all the requisites necessary to its admission. If there was any evidence afterwards introduced tending to show that the reputation was not general, this formed no reason for not admitting the testimony of these witnesses at the time they were put upon the stand. We are not pointed to any such evidence; but in any event the whole

subject was controlled by a proper charge from the court, and the jury were in effect told to disregard the evidence, if they found the reputation did not fulfil the requirements of the law upon the subject, as given to them by the court.

All the questions raised by the assignments of error which demand our attention having been disposed of in favor of the appellees, the judgment will be affirmed.

*Affirmed.*

Opinion delivered December 14, 1886.