J. E. HAYWORTH, ADMINISTRATOR, v. MARGRETH WILLIAMS ET AL.

Decided May 25, 1909.

**1.—Putative Wife—Homestead—Title by Limitation—Case Distinguished.**

A putative wife may assert title by limitation to land acquired by her reputed husband during the cohabitation, but occupied by her exclusively and adversely to the claims of such husband for the necessary length of time. Cervantes v. Cervantes, 76 S. W., 790, distinguished.

**2.—Limitation—Mistake as to Title.**

It is immaterial that an occupant of land is mistaken as to the nature or character of his title to the land; if he claims it as his own in the manner and for the length of time prescribed by the statute, limitation will run in his favor.

**3.—Same—Case Stated.**

In a suit of trespass to try title by a man against his putative wife for the title and possession of land occupied by her, evidence considered, and held sufficient to support the judgment of the court that the wife had acquired title to the land by limitation as against the reputed husband.

**4.—Trespass to Try Title—Limitation—Burden of Proof.**

The burden of proof is on the defendant in trespass to try title to establish his plea of title by limitation to the land in controversy.

**5.—Homestead—Illegitimate Daughter.**

An illegitimate daughter may, under certain circumstances, have a homestead right in land owned by her father.

**6.—Illegitimate Cohabitation—Property Rights.**

Persons living together in illegitimate cohabitation have a joint interest in property acquired by their joint efforts.

Appeal from the District Court of Cooke County. Tried before Hon. Clem. B. Potter.

*Stuart & Bell,* for appellant.—On proposition that wife can not acquire title to the husband's land by adverse possession during the continuance of the marriage relations even where the husband has abandoned the wife without cause: Cervantes v. Cervantes, 76 S. W., 790.

That the possession of appellee in this case has not been adverse to Thomas Jefferson: Mhoon v. Cain, 77 Texas, 318; Schliecher v. Gatlin, 85 Texas, 272; Keys v. Mason, 44 Texas, 140; Nichols v. Nichols, 79 Texas, 332; Chance v. Branch, 58 Texas, 493; Gillespie v. Jones, 26 Texas, 343; Texas Western Ry. v. Wilson, 83 Texas, 157; Warren v. Frederichs, 83 Texas, 384; Texas & Pac. Ry. v. Gaines, 27 S. W., 266, 267; Toyaho Creek Irrigation Co. v. Hutchins, 52 S. W., 104.

That the marriage of appellee and Thomas Jefferson, although assumed under the forms of a regular marriage, was invalid and conferred on appellee no rights in Thomas Jefferson's property as community property as such rights conferred by statute depend on a valid marriage: Routh v. Routh, 57 Texas, 589; Chapman v. Chapman, 32 S. W., 564.

That the marriage of appellee and Thomas Jefferson being illegal and not contracted by appellee in good faith, appellee can not claim any interest in the property acquired by Thomas Jefferson during the pretended marriage between appellee and said Thomas Jefferson: Lawson v. Lawson, 69 S. W., 246; Morgan v. Morgan, 21 S. W., 154.

*Green & Blanton* and *Potter & Culp.* for appellees.—The fact that the occupant of the land made a mistake as to the title or right by which it was claimed, will not prevent the statute of limitation from running in favor of the occupant, if, in fact, it was claimed and held hostile to the owner. Price v. Eardley, 77 S. W., 416; Village Mills Co. v. Manley, 94 S. W., 102.

The appellant having placed the appellee in possession of the land for the purpose of continuing his unlawful and immoral relations with her, the law will not lend its aid to dispossess her. 9 Cyc., 545; Hill v. Freeman, 49 Am. Rep., 48; Dent v. Ferguson, 132 U. S., 50; Specht v. Collins, 81 Texas, 215; Seeligson v. Lewis, 65 Texas, 221; West v. Grand Lodge, 37 S. W., 966; Been v. Landman, 88 Texas, 435.

Where a married daughter is left a widow without any means of support and returns to the home of her parents to take up her permanent abode again with the family, she becomes a constituent of the family and may assert homestead rights in the homestead of the family. Lane v. Philips, 69 Texas, 241; Gay v. Halton, 75 Texas, 206; Childers v. Henderson, 76 Texas, 664; Kruger v. Wolf, 33 S. W., 663; Drought v. Stallworth, 100 S. W., 188; Rutherford v. Mothershed, 92 S. W., 1021; McDonnell v. Ragsdale, 71 Texas, 26.

SPEER, ASSOCIATE JUSTICE.—This suit was brought in the District Court of Cooke County on September 9, 1905, by Thomas Jefferson as plaintiff in form of trespass to try title against Margreth Williams, hereinafter styled appellee, to recover one hundred and sixty-nine and five-eighths acres of land in the said county, conveyed to Thomas Jefferson by N. W. Wheeler on April 10, 1880. On October 30, 1907, appellant was allowed to make himself a party plaintiff and to prosecute the suit as temporary administrator of the estate of Thomas Jefferson, deceased, Thomas Jefferson having died and appellant having been lawfully appointed temporary administrator of his estate, and as such temporary administrator authorized and empowered to prosecute this suit for the estate of said Thomas Jefferson. On October 30, 1907, appellant filed his first amended original petition in trespass to try title and to recover said land and rent thereon at the rate of three hundred dollars per year from January 1, 1905. Appellee filed a plea of not guilty on November 4, 1907, and on the same date Mrs. Nettie Maloy entered her appearance in said suit, claiming an interest in said land and asking that she be allowed to make herself a party defendant. On the same date appellant filed his supplemental petition and answer to the answer of Mrs. Nettie Maloy, claiming same relief against Mrs. Maloy as asked for against appellee. The trial commenced on the 4th day of November, 1907, and on November 6, 1907, appellee filed a plea in a trial amendment claiming title to the land in controversy under the ten years statute of limitation. On the same date appellant filed his trial amendment and supplemental petition in response to said plea in limitation, claiming that said plea was insufficient because any limitation claimed by appellee, Margreth Williams, was claimed by her as the wife of Thomas Jefferson, and that the law does not allow such a claim, and that her possession held and claimed as wife of Thomas Jefferson was insufficient to sustain said plea. The case was submitted to the jury on special issues on November 6, 1907, and on the same date the jury returned a verdict on said issues, upon which the court rendered judgment in favor of appellee on the ground that her plea of limitation of ten years had been sustained by the finding of the jury, and entered judgment in her favor against appellant and Mrs. Nettie Maloy, from which

judgment appellant has duly appealed to this court and here assigns error and seeks revision of said judgment.

Appellant by various assignments of error presents two questions as decisive of this appeal. First, appellant contends that as the defendant Margreth Williams claimed to be the wife of Thomas Jefferson at the time Thomas Jefferson bought the land in controversy and at all times since Thomas Jefferson bought said land, and whatever claim she has asserted to the land in controversy has been asserted as the wife of Thomas Jefferson, and that as she entered on said land as the wife of Thomas Jefferson, the answer of the jury to question No. 5, that said defendant has had peaceable and adverse possession of the land sued for for more than ten years prior to the institution of this suit, cultivating, using and enjoying the same to the exclusion of Thomas Jefferson, is contrary to the undisputed evidence and to the law, and that judgment should be rendered in favor of appellant for the land in controversy under the other findings of fact of the jury. Appellant's other material contention is that the court erred in instructing the jury, in effect, that the burden of proof on the issue of limitation was on appellant.

It appears from the evidence in this case that Thomas Jefferson in 1859 abandoned his wife, to whom he had been previously married and with whom he was living at that time in the State of Pennsylvania, and entered into the pretended and fraudulent marriage with the appellee Margreth Williams, and from said year and from the time of said pretended marriage lived with appellee as his wife, residing first in St. Louis, afterwards for twelve or fifteen years in Iowa, and later in New Orleans. That at the time of contracting said pretended marriage appellee had been working for the family of said Thomas Jefferson and was a comparatively ignorant country girl of about twenty years of age; that in the year 1880 the said Thomas Jefferson bought the land in controversy in Cooke County, Texas, and placed appellee and the children of himself and appellee thereon; that during the time referred to, from 1859 to 1880, and during their residence at the various places before named, appellee had discharged to said Thomas Jefferson the relation of wife, and that what property he was possessed of in 1880 was property acquired by their joint effort, to which she had contributed not only in the way that a wife ordinarily does in building up a community estate, but did work, such as doing sewing for the public, and materially contributed to the support of their children and to the creation of the joint property belonging to them held by Thomas Jefferson. The jury found that Thomas Jefferson and appellee were married, but that appellee did not in good faith believe she was the lawful wife of Thomas Jefferson, having also found that the testimony showed that Sarah Jefferson was still living at the time of the alleged marriage between Thomas Jefferson and appellee, and that the marriage between her and Thomas Jefferson had never been dissolved by divorce or otherwise. It is shown, however, by the evidence that from 1859 until the filing of this suit on the ninth day of September, 1905, Thomas Jefferson in all the various places that he had lived with appellee and their children had held them out to be his wife and children and had never anywhere disclaimed that such was the case. After placing appellee and her children on the land in controversy in 1880 Thomas Jefferson, after remaining

with appellee a short while, went back to New Orleans, and for several years thereafter was only occasionally on the farm in Cooke County for short periods of time. For more than ten years prior to the filing of this suit he had only been on the place in Cooke County once, and then remained only about half an hour. It appears from the evidence that from about the time that appellee and her children were placed on the farm she and the children largely provided for and took care of themselves, entirely so for the last ten years, without aid or assistance from Thomas Jefferson.

A majority of this court are unable to agree with the contention of appellant that the jury is not sustained by the evidence in finding for appellee on her plea of title to the property in controversy under the ten years statute of limitation. It should be borne in mind that the findings of the jury in reply to special issues submitted to them conclusively establish that appellee was not the legal wife of Thomas Jefferson, and that the doctrine laid down in the case of Cervantes v. Cervantes, 76 S. W., 790, can not apply in this case. The question of limitation herein must necessarily be considered with reference to the findings of the jury on the question of marriage, and but for the marriage of the parties in the Cervantes case there is no doubt but the holding would have been in favor of the claim of the wife under her plea of limitation. The conclusion reached in that case was impelled by our laws in reference to husband and wife, making the property acquired by either after marriage (with certain exceptions) the property of both husband and wife, however it may have been acquired. When the wife acquires land by limitation the husband acquires the same title. If the wife should acquire the land of another by limitation it would be the land of the community estate, though the husband may have never entered on or set up any claim to it. We have no such trouble in this case. There was no legal marriage and consequently no relation of husband and wife, and there is no reason in law why the appellee could not acquire the land by limitation against Thomas Jefferson the same as she could against anyone else, if she held it a sufficient length of time adversely to him.

But it is contended by appellant that appellee's having based her right to claim the land upon the fact that she was married to Thomas Jefferson shows that her claim must necessarily have been subordinate to the title of Thomas Jefferson. We do not think this contention sound. If she denied Thomas Jefferson's right to the land and claimed it as her own and used it and occupied it as such, it does not make any difference whether she claimed it as pre-emptor, as a purchaser, as an heir, or as a wife. The question is not what character of title she asserted; she must have asserted some title; but the question is, did she hold the possession hostile to Thomas Jefferson? A party who goes on land thinking it public domain, intending to acquire the title by preemption or purchase from the State, if he occupies it long enough, can hold it by limitation against the real owner, though the land turned out to be not vacant. In such case the occupant has made a mistake in the right by which he claims the land, but there is no doubt about his claiming it and asserting a title or right in himself to the land, and such right will be protected by limitation, notwithstanding his mistake. See Price v. Eardley, 34 Texas Civ.

App., 60; Village Mills Co. v. Manley, 42 Texas Civ. App., 420. In this case the appellee thought, or claimed to think, that she was the lawful wife of Thomas Jefferson, but she held possession of the land against him, denied his right to sell it and denied his right to occupy it with her. Not being the wife of Thomas Jefferson, she had no rights growing out of that relation, but as she actually occupied the land, actually claiming it as hers, the statute runs in her favor.

Thomas Jefferson was advised of the appellee's adverse claim as far back as in 1884, when he filed a divorce suit and therein conceded her right and ownership of one-half of the land and asked that it be set apart to her, but denied such right and ownership to the whole of the land in controversy. It thus appears that under the formal admissions of appellant's decedent thus made there could be no question about appellee's right to hold one-half of it by limitation, and we conclude that the evidence warranted the jury in holding that she was entitled to the whole of it. Thomas Jefferson testified: "In 1880 she made things so uncomfortable for me that I sent her to Texas with her children and placed them on the farm and told them to support themselves. . . . I made several demands on her (meaning appellee) to sell it (meaning the home), but she claimed it as a homestead." Thomas Jefferson further testified: "The defendant began occupying the land in controversy as a home in 1880 and up to the present time." This witness further testified: "I presume all the time I lived on the land aggregates about three years." The appellee testified by deposition: "I claim interest in the place I am now occupying because I am the wife of Thomas Jefferson; I do not claim that Thomas Jefferson gave me the place; I claim that I am married to Thomas Jefferson and that I am entitled to the place because I am his wife; I claim the place against Thomas Jefferson and everybody else because I am his wife; I have full possession of the same and have been using and occupying the same for more than twenty years." She also testified that she had not seen Thomas Jefferson for more than ten years until three or four months before this suit was instituted, when he came to the place and stayed about a half hour. She also testified that since he went away they had built a barn on the place and also put it all under good fence, and that her son, Will Jefferson, furnished the money, and that she took part of the rent money and built the fence, and that she paid the taxes on the land all but one time and that was the first time after the place was bought; that she paid the taxes ever since and that the land was rendered for taxes in her name. Will Jefferson, son of Thomas Jefferson and appellee, testified that his father left Texas in 1889 or 1890 and that he had lived in New Orleans ever since he left; that he died on the 10th of February, 1907.

Associate Justice Speer expresses no opinion on the facts in view of the reversal of the judgment for the error in the charge.

We are all of the opinion, however, that the burden of proof was on the appellee to sustain her plea of limitation, and that the court should have so instructed the jury, and that in the absence of such instruction the ninth paragraph of the court's charge, to wit, "The burden of proof is on the plaintiff to prove his contentions by a preponderance of the evidence, by which is meant the greater degree and weight of credible evidence, and unless he has done so you will make an answer in favor of

the defendant's contention," had the effect to place the burden of proof on the issue of limitation on appellant and was such error as requires that this case be reversed and remanded. We are sustained in this conclusion by an unbroken line of decisions in this State following an opinion by Chief Justice Wheeler, to the effect that the burden of proof is on the party who relies on the defense of limitation, in the case of Smith v. Power, 23 Texas, 30. See, also, 20 S. W., 945; 26 Texas, 39; 67 Texas, 149; 1 Cyc., 1134.

In view of another trial of the case we feel it incumbent upon us to pass upon the two cross assignments of error filed by appellees, and are of opinion that the court erred in excluding the evidence of the defendant Mrs. Nettie Maloy on the issue of her homestead interest in the property in controversy, and upon another trial of the case the evidence excluded should be admitted, as we are inclined to the opinion that in the event appellant should recover the whole of the land, the defendant, Mrs. Maloy, would have a right to the homestead use of the property, notwithstanding it appears from the record that the said Mrs. Nettie Maloy was the illegitimate daughter of Thomas Jefferson and appellee. In any event, we are of the opinion that the evidence excluded should have been admitted and the issue with reference to the homestead character of the property under proper instructions from the court should have been submitted to the jury.

We are further inclined to the opinion that upon another trial of the case the jury should be instructed in substance that if they should find from the evidence against the appellee's plea of title by limitation, they should then determine the further issue as to whether or not upon the evidence the property was acquired by money accumulated and earned by the joint efforts of appellee, Margreth Williams, and Thomas Jefferson, and that if the jury find from the evidence that the acquisition of the property in controversy was the result of the joint efforts of said appellee and Thomas Jefferson, the court should then and in that event render judgment vesting title to half of the property in controversy in appellant and appellee respectively.

As hereinbefore indicated, we are of the opinion that the case should be reversed and remanded for a new trial, which is accordingly done.

## ON REHEARING.

We are asked by appellant to reconsider our judgment heretofore rendered overruling his motion for rendition of judgment, wherein he agrees that judgment for one-half the land in controversy may be rendered in favor of appellee Margreth Williams, and to limit the issues upon another trial to that of partition according to the rights of the respective parties, as indicated in the opinion of the Supreme Court on certified question. But while it may be true we have the power to affirm the judgment as to the issue of the validity of the marriage between appellee Margreth Williams and Thomas Jefferson, deceased, and as to the issue of the legitimacy of appellee Nettie Maloy, and to confine the inquiry on another trial to a determination of the one question of the extent of appellee's contributions to the acquisition of the land in question, still we do not think there is any necessity for our exercising such a power.

The case on the former trial was not tried upon any such theory, and no attempt whatever was made to show the extent of appellee's contributions toward the purchase, and if her rights are finally to be determined in accordance with the Supreme Court opinion, we can not say that she will not be able to recover on another trial even more than the one-half which appellant now agrees may be awarded to her by the judgment of this court. As an original proposition we were inclined to hold, as indicated in our opinion and in our certificate to the Supreme Court, that appellee would be entitled to one-half the land in controversy upon the reasoning there stated, but the Supreme Court has held that her recovery should be limited to a share in the land in the proportion that her labor contributed in producing the purchase money, and it is along this line the case must now be decided. We therefore overrule appellant's motion for a reconsideration.

We are also asked by appellees to reopen for argument appellant's motion for rehearing of her former motion to render judgment, calling our attention to article 1699, Sayles' Texas Civil Statutes, with which the opinion of the Supreme Court is thought to be in conflict, counsel for the motion very politely suggesting that "appellee's rights should not be lost through the ignorance of her counsel if the light should shine before the last judicial nail is driven in the coffin." The article cited reads: "Where a man having by a woman a child or children shall afterward intermarry with such woman, such child or children, if recognized by him, shall thereby be legitimated and made capable of inheriting his estate. The issue also of marriages deemed null in law shall nevertheless be legitimate." In Hartwell v. Jackson, 7 Texas, 576, this statute was construed by our Supreme Court, Chief Justice Hemphill remarking that: "The expressions in which this section is embodied are too perspicuous to require comment. The issue of marriages deemed null in law, without regard to the grounds of nullity, are legitimated and are consequently endowed with all the rights of the legitimate issue." The same statute is again referred to by the learned Chief Justice as having this effect in Lee v. Smith, 18 Texas, 142. While counsel for appellees very generously assume the responsibility for the oversight is not citing this statute on the original hearing, and while possibly if it had been cited the decision of our Supreme Court on the right of appellee Nettie Maloy to be treated as an unmarried daughter living with the family of the deceased at the time of his death, under Sayles' Texas Civil Statutes, article 2046, might have been different, still we do not see that we are in a position to afford appellees any relief in this particular. An examination of the opinion reversing and remanding this case, originally filed by us, will disclose that we were of opinion Mrs. Maloy would be entitled to recover the homestead of Thomas Jefferson, deceased, notwithstanding she was his illegitimate daughter. It was therefore an immaterial question with us whether she was legitimate or otherwise, and we gave the matter no consideration. Under the statute cited by appellees it would seem, if the question were an open one before us, that Mrs. Maloy is the legitimate child of Thomas Jefferson and Margreth Williams, and as such entitled to the rights of an unmarried daughter remaining with the family at the time of decedent's death. But as before indicated, the question is beyond our control, and appellees' remedy, if

they have one, is to seek a rehearing of the matter in the Supreme Court, as we would feel a delicacy in again certifying the same question to that court. Appellees' motion is therefore overruled.

*Reversed and remanded.*