## NESBIT et al. v. DALLAS BANK & TRUST CO.

### No. 11600.

Court of Civil Appeals of Texas. Dallas.
March 23, 1935.

Rehearing Denied April 27, 1935.

Muse & Muse, of Dallas, for appellants.

McBride, Hamilton, Lipscomb & Wood, of Dallas, for appellee.

JONES, Chief Justice.

This is a garnishment suit in which appellee, Dallas Bank & Trust Company, is the plaintiff in garnishment, the First National Bank of Winnsboro, Tex., is garnishee, J. S. Nesbit is the original defendant, G. C. and S. F. Nesbit, claiming to do business as Crisman & Nesbit, are defendants impleaded by garnishee, and P. R. Clark and W. J. Brand are interveners. The original defendant, the impleaded defendants, and interveners are the appellants. On a trial in a district court of Dallas county, judgment was rendered in favor of appellee, and appellants have duly perfected this appeal.

J. S. Nesbit is frequently designated as "Sam" Nesbit in the record, and will hereinafter be so designated. The other appellants will be designated by their respective names. The following is a sufficient statement of the facts:

On January 24, 1933, appellee obtained a judgment in a district court of Dallas county, in the sum of $3,468.66, principal, interest, and attorney's fee, against Sam Nesbit and others not necessary here to mention. The judgment is valid and no part of same has been paid. On February 4, 1933, the garnishment proceedings, based on this judgment, were begun by a proper affidavit by appellee, and the statutory writ duly served on the garnishee. Answer by the garnishee was duly filed, in which it was stated, in effect, that it was indebted to Crisman & Nesbit in the sum of $1,996.87; that if the original defendant, Sam Nesbit, doing business as Crisman & Nesbit, is the same person as the aforesaid Crisman & Nesbit, the garnishee is now, and was at the time the writ of garnishment was served, indebted to said defendant in said sum; that if the above-mentioned original defendant and the said Crisman & Nesbit are not one and the same; then garnishee is not now, and was not at the time said writ of garnishment was served, indebted in anything or amount to the said defendant, Sam Nesbit, doing business as Crisman & Nesbit; that the said sum of money represents the balance of deposits in garnishee bank made by one J. S. Nesbit, and stands on the books of garnishee in the name of Crisman & Nesbit; that said sum of money is claimed by G. C. and S. F. Nesbit, as owners and as doing business under the name of Crisman & Nesbit; and that said Sam Nesbit is not a member of said firm, and owns no interest in said money.

After making negative answers to other questions required by the writ of garnishment, garnishee alleges, in effect, that it is necessary for its protection that the original defendant, Sam Nesbit, trading as Crisman & Nesbit, and J. S. Nesbit, G. C. Nesbit, and S. F. Nesbit be made parties defendant, in order to settle the identity of the firm of Crisman & Nesbit; that the interest of the original defendant, Sam Nesbit, trading as Crisman & Nesbit, J. S. Nesbit, G. C. Nesbit, and S. F. Nesbit in said fund be adjudicated; and that garnishee holds the said sum of $1,996.87 in its hands "solely as a stakeholder and the same is subject to the orders of this Honorable Court, to be paid to the proper party or parties," and that it be protected in the conflicting claims of said money.

In response to the plea of garnishee, Sam Nesbit and J. S. Nesbit, being different designations of the same individual, duly filed an answer. G. C. and S. F. Nesbit duly filed their answer, setting out their claims to the sum of money then on deposit in the garnishee bank, and denied that Sam Nesbit had any interest in said fund. As it will be necessary later to discuss the subject-matter of this answer, its allegations will not here be set out, other than to say that the answer was complete, and on its face shows that the money belonged to G. C. and S. F. Nesbit, Sam Nesbit's answer denied connection with the partnership of Crisman & Nesbit since June 1, 1932, and adopted the answer of G. C. and S. F. Nesbit.

Interveners, Clark and Brand, duly filed their petition in intervention, alleging that the said sum of money in the hands of the garnishee is impressed with a trust in their favor, which was duly created on sufficient consideration by an instrument in writing, duly executed by G. C. and S. F. Nesbit, with Sam Nesbit as trustee. This alleged trust agreement will hereafter be set out in full and the consideration for its execution fully described. These respective answers and the plea in intervention were filed March 20, 1933.

Appellee duly filed its verified answer on March 23, 1933, in which it alleged that the sum of money on deposit in the garnishee bank, as shown by garnishee's answer, was deposited "in said garnishee bank by the said Sam Nesbit, who answers under the name of J. S. Nesbit, trading as Crisman & Nesbit, and doing business as Crisman & Nesbit; that the said Sam Nesbit so doing business is and has been, since that said deposit was made, the owner thereof, and that none of the other defendants herein have any right, title or interest therein." Appellee especially denied that S. F. Nesbit and G. C. Nesbit compose the partnership of Crisman & Nesbit, but that during all of the time herein mentioned, Sam Nesbit was doing business under the name of Crisman & Nesbit, and had been so doing business for several years past, and that the said money on deposit with the garnishee was Sam Nesbit's and not the property of S. F. and G. C. Nesbit, or any other party.

The undisputed evidence shows that the firm of Crisman & Nesbit was organized in 1903, for the purpose of doing a construction business and was originally composed of J. V. Crisman, J. Y. Nesbit, and Sam Nesbit, the latter two being father and son; that J. Y. Nesbit and J. V. Crisman had died several years prior to 1932, and the business had been conducted by Sam Nesbit under the firm name of Crisman & Nesbit. In

1931, Sam Nesbit's health was failing and, under the advice of a physician, he retired on June 1, 1932, from active construction work. G. C. and S. F. Nesbit, his sons, then organized a partnership under the old firm name of Crisman & Nesbit, as shown by the following written agreement:

"Dallas, Texas. June 1, 1932. This day we, S. F. and G. C. Nesbit, have mutually agreed to form a partnership composed of ourselves for the purpose of carrying on a General Contracting Business. We each invest an equal amount in money—equal time in estimating work. S. F. Nesbit to have full charge of and give his time on constructing of jobs to the masonry. G. C. Nesbit to have charge of the carpentry work. It is especially agreed that we each give our entire time to the final completion of all jobs.

"It is further agreed that we each share equally in all profits.

"This partnership is to operate under the name of Crisman & Nesbit, which firm was organized in one thousand Nine hundred and three (1903) by our grandfather, J. Y. Nesbit, J. V. Crisman and our father, J. S. Nesbit. J. S. Nesbit this day being compelled to retire from actual building construction and being the only survivor of the firm hereby gives his consent to the above without compensation to himself or liability to us other than he is to act with us in an advisory capacity on building contracts, solicit business, enter into and sign contracts for the firm, having the power to collect and pay out money on contracts, keeping an accurate account of same. His compensation being Forty Dollars ($40.00) per week for such services rendered on any contracts.

"[Signed] S. F. Nesbit
"[Signed] G. C. Nesbit."

In the latter part of March, 1932, Sam Nesbit, under the firm name of Crisman & Nesbit, entered into a contract to erect a brick building in the city of Dallas, described as the Moulard building. On June 1, 1932, this contract was completed, except the laying of concrete floors by a subcontractor, the final payments on materials used, and collecting the final payments on the contract price. On June 7th, 8th, and 9th the last deliveries of material were made and paid for by Crisman & Nesbit, by Sam Nesbit. A little later, the final settlement was made on the contract and the balance due was received by Sam Nesbit. This was the only uncompleted job of Sam Nesbit,

trading as Crisman & Nesbit, on June 1, 1932, at the time he retired and gave permission to his two sons, to form a partnership under the old firm name. The written contract of partnership between G. C. and S. F. Nesbit was pleaded in hæc verba in their answer.

In September, 1932, F. J. Cox had plans and specifications drawn for a brick veneer residence near Winnsboro, Tex. C. H. Machen, an attorney residing in Dallas, had the plans and specifications in his office and was acting as attorney for Cox, with power to let the building contract. An employee of a lumber company in Winnsboro attempted to get in touch with G. C. Nesbit and give him this information, so that his firm could bid on it. G. C. Nesbit was not at home, but Sam Nesbit answered the telephone and received the information. After consultations with Machen, examinations of the plans and specifications, Crisman & Nesbit received the contract to construct the building, for the sum of $10,866. These negotiations were carried on to a large extent by Sam Nesbit, but G. C. and S. F. Nesbit figured the costs and named the price that would constitute the firm's bid. A written contract was entered into, but only the first and last paragraphs of the contract are copied in the record. The first paragraph reads: "This agreement made the twenty-sixth day of September, in the year Nineteen Hundred and Thirty-Two, by and between Crisman & Nesbit, General Contractors of Dallas, Texas, hereinafter called Contractor, and F. J. Cox, Route #1, Overton, Texas. * * *" The last paragraph reads: "In witness whereof the parties hereto have executed this agreement, the day and year first above written. F. J. Cox, owner. Crisman & Nesbit, J. S. Nesbit, contractor. O.K. C. H. Machen."

The contractor was required to execute a bond in the sum of $5,433. This bond was on the standard form of bond used generally by builders. It named Crisman & Nesbit, of Dallas, as principal, and P. R. Clark of Dallas and "other signors as sureties." The bond was executed by Crisman & Nesbit (by) J. S. Nesbit, with P. R. Clark, W. J. Brand, and L. F. Bonner, as sureties. There is no recitation in the bond as to who composed the firm of Crisman & Nesbit.

Two of the sureties, Clark and Brand, knew that J. C. and S. F. Nesbit then composed the firm of Crisman & Nesbit, and, as such, had entered into the building contract.

Before they consented to become sureties on the bond, they required the execution of the following agreement between themselves and the contractor:

"This agreement made the 27th day of September, 1932, by and between S. F. Nesbitt and G. C. Nesbitt, doing business as Crisman & Nesbitt, and P. R. Clark and W. J. Brand,

"Witnesseth, that S. F. Nesbitt and G. C. Nesbitt, doing business as Crisman & Nesbitt, have contracted to build and erect a two-story residence building at Winnsboro, Texas, for F. J. Cox, as owner, at a contract price of Ten Thousand Eight Hundred and Sixty-Six ($10,866) Dollars, and that the owner has required a bond to be executed by two or more approved sureties.

"That, the said P. R. Clark and W. J. Brand for and in consideration of executing said bond as surety and having executed said bond as a consideration required; that the said S. F. Nesbitt and G. C. Nesbitt open a bank account in the First National Bank of Winnsboro, and shall deposit all moneys paid to them by the said F. J. Cox into said account, subject only to check by J. S. Nesbitt, who shall act as Trustee for said funds on behalf of material men, laborers and furnishers of material or labor in the construction of said residence and for P. R. Clark and W. J. Brand, and who shall be authorized to disperse said funds only to material men and/or laborers who shall have furnished material or been hired in the construction of said building. It is understood that the said J. S. Nesbitt, as Trustee, shall require receipted bills for material and signed payrolls for labor, and that upon the completion of the said building that he shall hold the remaining funds for at least ninety (90) days for the purpose of securing any outstanding obligation, and at the end of ninety (90) days, if there remains any funds in his hand as Trustee, that they shall be paid to the said S. F. Nesbitt and G. C. Nesbitt, operating as Crisman & Nesbitt.

"Further, in consideration of the execution of said bond by P. R. Clark and W. J. Brand, that in the event of default by said S. F. Nesbitt and G. C. Nesbitt, operating as Crisman & Nesbitt, in the construction of said building that said P. R. Clark and W. J. Brand may at any time thereafter take steps as they may deem necessary or proper to obtain their release from all liability under said bond, and to secure and further indemnify themselves against loss and all damage and expense which they may sustain or incur or be put to in obtaining such release or in further securing themselves against loss, shall be borne and paid by the said S. F. Nesbitt and G. C. Nesbitt, operating as Crisman & Nesbitt.

"In witness whereof, the parties have executed this agreement the day and year first above written and the said J. S. Nesbitt has agreed to act as Trustee in carrying out the terms and provisions thereof.

"S. F. Nesbitt
"G. C. Nesbitt
"P. R. Clark
"W. J. Brand
"Witnesses: A. N. Wood
"H. C. Dodson

"I, J. S. Nesbitt, have read the foregoing contract and agree to act as Trustee under its terms and conditions. It being understood that I, as Trustee, shall assume no obligation in connection with the contract between S. F. Nesbitt and G. C. Nesbitt, doing business as Chrisman & Nesbitt, and F. J. Cox, other than to act as Trustee for moneys accruing therefrom and shall be responsible to S. F. and G. C. Nesbitt, doing business as Chrisman & Nesbitt, and P. R. Clark and W. J. Brand, only for the disposition of said funds in carrying out the terms of the aforementioned obligation. J. S. Nesbitt."

This agreement is quoted in hæc verba in the answer of G. C. and S. F. Nesbit. When the bond was presented to Machen, as attorney for Cox, with Clark and Brand as sureties, he declined to accept the bond without additional sureties; later, Bonner was secured as a third surety, and the bond was then accepted. Bonner's signing the bond was after the written agreement was made between the other bondsmen and G. C. and S. F. Nesbit, doing business as Crisman & Nesbit.

The contested issue made by appellee's pleadings, in answer to the pleadings of appellants, is as to the ownership of the money in the garnishee bank, deposited by Sam Nesbit, to the credit of Crisman & Nesbit; in other words, who composed the firm of Crisman & Nesbit at the time this firm entered into the building contract? The undisputed evidence shows that G. C. and S. F. Nesbit, claiming to be the contractors in the construction of the Cox house, did not know of the note indebtedness of Sam Nesbit to appellee, nor did the sureties thereon know of this indebtedness. As shown by its answer, the garnishee bank did not know who

constituted the firm of Crisman & Nesbit; nor did it know of the agreement between the two sureties and G. C. and S. F. Nesbit, in reference to the use of the money paid for such construction. Appellee did not know of the change of the personnel of the firm, or of the agreement with the sureties, when the writ of garnishment was sued out and served.

The case was tried to the court, without a jury, and judgment entered in favor of appellee, allowing the garnishee $75 as a reasonable attorney's fee for answering.

At the request of appellants, the court filed findings of fact and conclusions of law. The findings of fact are voluminous, but are, in every respect, in favor of appellee and, if supported by substantial evidence on the material issues, warranted the judgment entered. The appeal challenges the findings of fact on the contested issues, on the ground that such findings are not supported by evidence, and on the further ground that such findings are against such a preponderance of the evidence that this court should set them aside.

These findings of fact are embraced in twenty-eight paragraphs, and those that relate to the original judgment, forming the basis of the garnishment proceedings, are sustained by the undisputed evidence in the case and are adopted as the findings of this court. The findings of fact, to the effect, that at the time the writ of garnishment was sued out appellee had no notice of the contract of partnership of June 1, 1932, and no notice that G. C. and S. F. Nesbit claimed to constitute the firm of Crisman & Nesbit, had no notice of the trust agreement entered into on September 27, 1932, between G. C. and S. F. Nesbit and the sureties, are either supported by undisputed evidence or by substantial evidence, and are adopted as the findings of this court. The correctness of such findings is not at issue on this appeal.

The findings of the trial court are to the effect that Sam Nesbit did not retire from active construction business on June 1, 1932, but executed the building contract in question; that G. C. and S. F. Nesbit did not on June 1, 1932, constitute the firm of Crisman & Nesbit, and did not execute the building contract for the construction of the Cox building, and did not own the money paid on estimates, in the construction of said building; and are not the owners of the said sum of $1,996.87, but that said deposits and said last-named sum of money were owned by

Sam Nesbit, and that said deposits made by Sam Nesbit, for Crisman & Nesbit, were not impressed with a trust for the specific purposes set out in the agreement of September 27, 1932, are all challenged on this appeal as being, either against the great preponderance of the evidence, or against the undisputed evidence. As to whether the evidence warrants these findings, constitutes the subject of this review of the judgment of the trial court.

The undisputed evidence is that Sam Nesbit, on June 1, 1932, and for some time prior thereto, was in failing health, being on crutches during the construction of the Moulard building, the last construction work, the appellants claim, he undertook under the firm name of Crisman & Nesbit; that his personal physician advised him that he would have to stop the heavy work he was doing; that on June 1, 1932, he announced to his two sons, G. C. and S. F. Nesbit, that he was going to retire, and that on said date G. C. and S. F. Nesbit, with their father's consent, drew up the partnership agreement, to the effect that they would continue the construction business under the old name of Crisman & Nesbit; that on September 26, 1932, the firm of Crisman & Nesbit entered into a contract with Cox for the construction of his building near the town of Winnsboro; that said contract was signed, "Crisman & Nesbit, (by) Sam Nesbit."

The undisputed evidence is that "Crisman & Nesbit" had been the trade-name for several years prior to June 1, 1932, and that on and after said date it existed only as a trade-name; that prior to said date it had been used solely by Sam Nesbit in his business as a contractor. The written contract of partnership between G. C. and S. F. Nesbit evidences the fact that Sam Nesbit relinquished his right to use such trade-name in the contracting business to these sons, and that from and after said date they alone had the right to do business under said name. Who composed the personnel of the firm contracting as Crisman & Nesbit on September 26, 1932, when the contract to erect the Cox building was entered into? The written contract of partnership shows that G. C. and S. F. Nesbit were such personnel at such time; the positive testimony of Sam Nesbit, G. C. Nesbit, and S. F. Nesbit is that they were "Crisman & Nesbit." The sureties, Clark and Brand, seeking to protect themselves as sureties on the building bond, contracted with G. C. and S. F. Nes-

bit, as composing the firm of Crisman & Nesbit. Is the fact that G. C. and S. F. Nesbit were Crisman & Nesbit disputed by any substantial evidence? Let us see.

It is true that, for several years previous to June 1, 1932, Sam Nesbit was the sole owner of the business of Crisman & Nesbit. This does not even tend to disprove the fact that on June 1, 1932, Sam Nesbit ceased to be the owner of such business, and that G. C. and S. F. Nesbit, under their partnership agreement, became the sole owners of the contracting business under the trade-name of Crisman & Nesbit. It is true that Sam Nesbit signed the Cox building contract for Crisman & Nesbit; this is not only consistent with the claim that Crisman & Nesbit, in whose name the contract was made, then consisted of G. C. and S. F. Nesbit, but is precisely in accord with the partnership agreement, the last paragraph of which reads:

"* * * J. S. Nesbit (Sam Nesbit) this day being compelled to retire from actual building construction and being the only survivor of the firm hereby gives his consent to the above without compensation to himself or liability to us other than he is to act with us in an advisory capacity on building contracts, solicit business, enter into and sign contracts for the firm, having the power to collect and pay out money on contracts, keeping an accurate account of the same. His compensation being Forty Dollars ($40.00) per week for such services rendered on any contracts.

"[Signed] S. F. Nesbit
"[Signed] G. C. Nesbit."

Whatever negotiations Sam Nesbit conducted in securing the Cox contract for Crisman & Nesbit, together with his signing the contract for Crisman & Nesbit, was the result of his duty to the firm of Crisman & Nesbit under his employment by such firm, as shown by the above-quoted provision.

It is true that the sums of money paid on estimates to the contractor were paid to Sam Nesbit, and deposited in the bank by him to the credit of Crisman & Nesbit, and paid out solely on the check of Crisman & Nesbit signed by Sam Nesbit. This likewise is in accord with the above-quoted provision of the partnership agreement, and in the performance of his employment duty under the above-quoted clause, and hence is entirely consistent with the fact that the firm of Crisman & Nesbit was then composed of G. C. and S. F. Nesbit only.

It is likewise true that tools used in the construction of the Cox building were tools that had been owned by Sam Nesbit as the only member of the firm of Crisman & Nesbit. This is not inconsistent with the contract of partnership, but entirely consistent therewith.

It is true that Sam Nesbit used, during the time the building was under construction, approximately $550 for his own personal use. He had the right to pay himself his wages of $40 per week from funds deposited. The amount he thus paid for his own use and benefit was less, by approximately $300, than the amount of his weekly wages. This is not inconsistent with the contract of partnership, but is in accord therewith.

It is true that Sam Nesbit, after June 1, 1932, paid for some material, under the firm name of Crisman & Nesbit, in finishing the construction of the Moulard building, the contract for which had been entered into in March previously, and that checks drawn in favor of Crisman & Nesbit for the final payments on said Moulard contract were received by Sam Nesbit after June 1, 1932. This was a contract previously entered into and was almost finished at the time Sam Nesbit retired from the contracting business in favor of his two sons, G. C. and S. F. Nesbit. These facts are in no way inconsistent with the claim that he retired from the construction business and ceased to do business as Crisman & Nesbit, after June 1, 1932. The contract of partnership did not take over this unfinished contract.

The burden of proof rested on appellee to prove by a preponderance of the evidence that the money in question was the money of Sam Nesbit, and this burden never shifted. Clark v. Hills, 67 Tex. 141, 2 S. W. 356. The instrument of writing, evidencing the fact that from June 1, 1932, Crisman & Nesbit became the trade-name of the partnership consisting of G. C. and S. F. Nesbit, is not impeached and the fact of such partnership disproved only by the proof of circumstances, all of which are entirely consistent with such instrument in writing, and with the fact that the partnership existed. Appellee could not discharge the burden of proof resting upon it in this case by such evidence. The fact that appellee had no notice of the change of the personnel of the firm is not a question in this case, for a

plaintiff in garnishment, who has an unsecured pre-existing debt, cannot occupy the position of an innocent party. Curtis v. Hart (Tex. Civ. App.) 26 S.W.(2d) 420, 421.

It is the statutory power of the Court of Civil Appeals to determine the sufficiency of evidence to support either a jury finding or a court's finding. Besteiro v. Besteiro (Tex. Com. App.) 65 S.W.(2d) 759, 760, 761, and authorities therein cited. In the exercise of such power, we hold that appellee failed to discharge the burden of proof resting upon it to establish its rights of recovery in this case.

There is an additional and equally as tenable a ground for holding the trial court was in error in the judgment rendered. Clark and Brand, two of the sureties, made it a condition precedent to their signing the required building bond, the execution of the contract by the builders, that an account be opened with the garnishee bank, and that all moneys paid by the owners on such contract should be impressed with a trust to pay the laborers and materialmen, and that Sam Nesbit should be the trustee, to whom all money should be paid on the contract and deposited by him in the garnishee bank and paid out only on his check for such purposes. These sureties had a right, as against any claim subsequently asserted by appellee, to impress the money paid in with a trust for the specific purposes named in the trust agreement, and the principal in the bond, whether it was Sam Nesbit, or G. C. and S. F. Nesbit, has the right to agree to the creation of such trust. This trust agreement is neither attacked by pleading nor evidence, and the trial court should not have disregarded it. It was exacted by Clark and Brand as a protection to them on the surety bond. The fact that neither the garnishee bank nor appellee knew of the existence of such trust in no way affects its legality and binding effect. Curtis v. Hart (Tex. Civ. App.) 26 S.W.(2d) 420, 421. The undisputed facts show that the full contract price for the building of the house is insufficient by $130 to pay the actual costs incurred in the construction of said building, and hence all of the funds paid by Cox were subject to this trust agreement.

We therefore reverse and remand the case for a new trial, consistent with the views herein expressed.

Reversed and remanded.