[ No. 1729. Decided July 13, 1895.]

J. F. Hart *et al., Appellants*, v. J. J. MANEY, *Respondent.*

ACTION AGAINST PRINCIPAL ON AGENT'S CONTRACT — WRONGFUL ACT OF SERVANT — ESTOPPEL TO DENY CONTRACT.

The agreement of the foreman of one engaged in pile-driving and contracting work to see that the board bill of himself and men would be paid will not render his principal liable, there being nothing to show that it was within the scope of the foreman's authority or employment to render his principal responsible upon such a contract.

The master is not chargeable with the acts of the servant unless he acts in the execution of authority given by the master.

Where a contract to furnish a certain quantity of lumber has been entered into with the agent of an undisclosed principal, and only a portion has been delivered, the seller cannot, in an action against the principal for the price of the lumber delivered, repudiate the rest of the contract on the ground that it had not been made with the principal.

*Appeal from Superior Court, Snohomish County.*

One of the causes of action set up in the suit of J. F. Hart & Co. against J. J. Maney was for the sum of $82.86, the value of lumber delivered to him under a contract with his agent Goerig. The defendant put in a counterclaim for $121.63 on the ground that all the lumber contracted for had not been delivered. The plaintiffs

sought to avoid the counterclaim on the ground that the contract had been made with Goerig as a principal and that upon discovering that he was acting as agent of Maney they refused to deliver any more lumber unless Maney should pay cash therefor.

*Headlee, Allen & Headlee,* for appellants.

*A. K. Delaney,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This appeal is brought here only on the errors alleged in the instructions of the court to the jury. It is difficult to tell, however, from the transcript, or from appellant's brief, what the instructions objected to really are. The instructions given by the court do not appear in the transcript. There appears a set of instructions denominated " Plaintiffs' Instructions to Jury," commencing with instruction No. 2 and ending with instruction No. 1. Then follow instructions entitled " Instructions asked for by Defendant," and these are all the instructions that appear in the record. On page 42 of the record, however, it is stipulated that plaintiffs duly excepted to the giving by the court of instructions numbered 1, 2, 3, 4, 5 and 8, asked by defendant and given by the court; and also excepted to the refusal of the court to give instructions numbered 6 and 7 asked by the plaintiffs.

This court really ought not to enter upon an investigation of the case at all upon such a record; especially inasmuch as the brief of the appellants does not refer to the particular instructions excepted to by number, but mixes the discussion of the instructions and the testimony in such a manner that it is difficult for the court to follow it. We will, however, undertake to decide the questions which we think were attempted to

be raised by the appellants.    The first instruction objected to is as follows:

"You are also instructed upon this [the first] cause of action that if you find from the evidence that the alleged conversation testified to by the plaintiff Hart as occurring between him and the witness Goerig, the agreement, if any, was that Goerig instructed Hart to engage board for the men and he, Goerig, would see that it was paid, then upon such evidence the plaintiff is not entitled to recover for anything on the first cause of action."

In this case the first cause of action was for a board bill, the plaintiffs alleging that they, at defendant's special instance and request, paid board for the defendant's employes to the amount of $36.25, which defendant agreed to pay. Hart & Co., the plaintiffs, were engaged in the mill business. J. J. Maney was engaged in contracting work, and the witness Goerig was his agent in such business. The testimony of plaintiff Hart on the first cause of action was as follows:

"We were doing a sawmill and lumber business at the times mentioned. In October, 1891, J. J. Maney had a contract of driving some piles at what is known as Hart's saw mill on the Snohomish river. . . . Al. Goerig, who was then foreman for J. J. Maney, asked me to engage board for himself and the other men running the pile driver at the sawmill boarding house, as he was not acquainted with J. O. Jelleberg, who was keeping the boarding house. I told him that I would do so, and went and saw the boarding house keeper and made arrangements with him to board the men, becoming personally responsible for the bill. Goerig told me that if I would engage the board he would see me paid. I afterwards paid the bill, which amounted to $36.25."

Goerig testified that he never made any such arrangements, or any arrangement at all with Hart con-

cerning the boarding of the men. But taking the
testimony of Hart alone, uncontradicted, it seems to
us that it in no way tends to establish a liability on
the part of Maney, and that therefore the instruction
is not objectionable. At most this testimony only
constitutes Hart the agent of Goerig to engage the
board for the men, and there is nothing in the record
to show that it was within the scope of Goerig's author-
ity or employment to make Maney responsible for this
contract. In fact, Hart does not testify that the con-
tract with Goerig was that Maney should become re-
sponsible for the board of the men, but parenthetically
states that Goerig was Maney's foreman in the busi-
ness of pile driving. But the testimony is that Goerig
was to pay for the board of the men if Hart would
make arrangements with the boarding house keeper
for their board. There must be something more than
this to constitute Goerig such an agent of Maney as
would bind him in such a transaction.

As to the second cause of action, the jury received
proper instructions, and, under the conflicting testi-
mony in relation to the contract, this court must as-
sume that they came to a correct conclusion. It seems
that while a scow belonging to the plaintiffs was in the
possession of Maney, according to the testimony of the
plaintiffs, it was loaned by Goerig to one Montandon,
and, according to the testimony of the plaintiffs, be-
came damaged. The court in relation to this phase of
the case, instructed the jury as follows:

" If you find from the evidence that the witness
Goerig was the agent of the defendant Maney, and
without any authority from the defendant took the
scow mentioned and described in the third cause of
action set forth in plaintiffs' complaint, then, although
the plaintiffs may be entitled in law to waive the tort
and sue for the use of such scow, the plaintiffs cannot

recover any amount except a reasonable compensation for the use of said scow while it was actually being used by the defendant. The plaintiffs are not entitled to recover for any damages done to said scow, as in law the master is not liable for the tortious acts of his agent or servant, although he may be liable for the use of property taken by his agent, and put to the use of the master or principal by such agent or servant."

All the instructions actually given by the court not appearing in the record, we are not able to tell how this instruction may have been modified by some other instruction; but, considering the testimony in this case, the instruction was evidently intended to bring the case within the rule that the master is not liable for the acts of a servant done without the scope of his authority. There is a difference between the negligent acts of a servant acting within his authority and the negligent acts of a servant acting without his authority. There is nothing in this record to show that Goerig had any authority whatever, and it cannot be presumed in the absence of proof that he had authority from Maney to loan a scow, which belonged to these plaintiffs, to a third person. If he did this, he did it upon his own responsibility, and for any damages which flowed from the wrongful act he alone is responsible to the plaintiffs in this case.

" When a servant acts under the special orders of his master, the master is not liable for his negligence in doing business not ordered." *Wilson v. Peverly*, 2 N. H. 548.

" Where a person employed by one as a servant is using the team of his master for his own purposes and benefit, . . . without any directions from the master, and he uses the team so negligently as to occasion injury to a third party, the master is not liable for such injury." *Bard v. Yohn*, 26 Pa. St. 482.

The doctrine which we wish to express, however, and which we think is the doctrine governing this case, is that the master is not chargeable with the acts of the servant unless he acts in the execution of authority given by the master. In such case the act of the servant is the act of the master, and not otherwise. *Middleton v. Fowler*, 1 Salk. 282.

The eighth instruction, which was objected to by the appellants, is as follows:

" You are further instructed that, if you find from the evidence that the witness Uphus was the agent of the plaintiffs, having power to sell lumber and manage the business of the plaintiffs, and that he made a contract to furnish the lumber necessary to construct and complete the trestle of the said railway company, and plaintiffs furnished a part thereof to the amount of $82.86, which amount plaintiffs claim in their complaint, then on such state of facts I charge you that the plaintiffs are estopped from now denying that the contract was made with the defendant Maney. Having recognized the contract as being with the defendant, by suing him in this action for the lumber delivered, the plaintiffs cannot repudiate the rest of the contract and thus escape their liability for a breach of same. The law will not permit a party to accept the benefits of a contract and escape at the same time the liabilities and obligations it imposes. Therefore, if you find that the contract to furnish and deliver the lumber for the trestle was made at all, I charge you that you must find that it was made with the defendant."

There can be no doubt of the correctness of the law enunciated in this instruction. We think the law, considering the testimony in this case, was substantially given by the instructions; and especially considering the condition of the record and the fact that it does not appear that all the instructions are set forth

in the transcript, we would be unwarranted in reversing the case.

The judgment will, therefore, be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.