EVANS, Appellant, v. DYKE AUTOMOBILE COM-
PANY, Respondent.

St. Louis Court of Appeals, December 11, 1906.

1. JUSTICES OF THE PEACE: Appeals: Amending Affidavit.
Where an appeal was taken from a judgment of a justice of
the peace, rendered in favor of the plaintiff and against two
defendants, which appeal appeared by the affidavit and bond
to be on behalf of both defendants, one of the appealing de-
fendants could not amend the affidavit for appeal so as to show
that no appeal was taken by the other defendant, when both
plaintiff and the other defendant treated the appeal as taken
by both defendants and the latter acquiesced in it by appear-
ance in the circuit court.

2. AGENCY: Authority of Agent: Bailment. An employee could
accept delivery of an article in behalf of his employer when
it was tendered in accordance with a previous arrangement
with his principal, though the general duties of such employee
were only to assist in the clerical work of the employer's office.

3. ———: ———: ———: Damage to Property Bailed by the
Servant of the Bailee. An agent of a company, engaged in
the business of dealing in automobiles, received an automobile
for his principal to sell on commission and then without the
knowledge or consent of his principal took it to his own resi-
dence and, while driving about the city on a pleasure trip with
it, negligently collided with an electric car so that it was des-
troyed. Held, the agent was acting without the scope of his
authority at the time and the principal was not liable.

Appeal from St. Louis City Circuit Court.—Hon.
Moses N. Sale, Judge.

REVERSED AND REMANDED.

Chilton Atkinson for appellant.

(1) There is a distinction between an irregular
appeal and no appeal at all; it is only in the latter class
of cases that the circuit court acquires no jurisdiction.
Curtis v. Tyler, 90 Mo. App. 345; Moulder v. Ander-

son, 63 Mo. App. 34.  (2)  The appellee may waive the defect in the appeal, if he choose, and does so by proceeding without objection.  Welsh v. Railroad, 55 Mo. App. 599; Long Bros. v. Coal Co., 56 Mo. App. 605.  (3) A surety's liability on a recognizance bond or appeal bond is not affected by the failure of the principal to sign the bond.  State v. Peyton, 32 Mo. App. 522; Johnson v. Johnson, 31 Ohio St. 131.

*Carter, Collins & Jones* for respondent.

(1)  Respondent had the right to amend the affidavit for appeal.  R. S. 1899, sec. 4072.  (2)  There can be no valid contention that H. B. Lemon, or any one authorized to act for him, ever appealed from the judgment rendered by the justice against him.  R. S. 1899, sec. 4060.  (3)  Defendant H. B. Lemon never entered into an appeal bond which is made an absolute prerequisite to perfecting an appeal under the provisions of section 4060, R. S. 1899.  Norton v. Porter, 63 Mo. 345.  (4)  The principal can only be held responsible for the acts of his agent done within the scope of his employment, and it certainly cannot be successfully contended that H. B. Lemon had authority to receive and sell second-hand automobiles for respondent.  But, appellant having charged in his petition that H. B. Lemon was acting as the agent for respondent in this transaction, and having sued both the agent and principal, and having procured a final judgment against the agent, he cannot prosecute this action against respondent who is charged in appellant's petition, as the principal.  Sessions v. Block, 40 Mo. App. 569; Priestly v. Fernie, 34 L. J. (Ex.) 172; Kendall v. Hamilton, 4 App. Cas. 514; Kingley v. Davis, 104 Mass. 179.

GOODE, J.—This is a suit for damages for the conversion of an automobile against the Dyke Automobile Supply Company and H. B. Lemon.  It was insti-

tuted before a justice of the peace on August 2, 1904, by a statement alleging that on July 6th of said year, appellant entered into a contract with the automobile company by which it was to take possession of a machine belonging to appellant, exhibit the same and make reasonable efforts to sell it, in consideration of receiving ten per cent of the proceeds of the sale if one was made; that thereafter, pursuant to said contract, the company took possession of said machine with the purpose of exhibiting it to a prospective purchaser; that appellant put the automobile in charge of one H. B. Lemon, who was then acting as the company's agent; that Lemon received the same as agent, displayed it to a prospective purchaser and afterwards, without the knowledge or consent of appellant, took it to his (Lemon's residence) and while on a pleasure trip with it in the city of St. Louis, the machine was struck by an electric car and destroyed. $500 damages was demanded. Appellant obtained judgment before the justice of the peace on August 17, 1904, and on the 26th of that month an appeal was taken to the circuit court. A question having arisen regarding whether or not Lemon appealed to the circuit court, the evidence on which the decision of the question depends will be given. The following affidavit for appeal and appeal bond were filed before the justice:

"State of Missouri, City of St. Louis, ss.

"Before the Justice Anthony A. O'Halloran, of the Fifth District, City of St. Louis, Missouri.

"A. D. Evans, plaintiff, v. A. L. Dyke Automobile Supply Co. (a corporation) and H. B. Lemon, defendants.

"This day personally appeared before me, Anthony A. O'Halloran, a justice of the peace for the Fifth District, city of St. Louis, Roy F. Britton, who, being duly sworn, upon his oath, says that the application for appeal in the above-entitled case, is not made for vexation

or delay, but because he believes the appellants to be injured by the verdict of the jury, and the judgment of the justice, and that this appeal is from the merits.

"Sworn to and subscribed before me this 26th day of August, 1904.          ANTHONY A. O'HALLORAN.

"ROY F. BRITTON,

"Address, Equitable Building."

"We, the undersigned A. L. Dyke Automobile Supply Co. (a corporation) and F. H. Britton, acknowledge ourselves indebted to A. D. Evans in the sum of eight hundred and no-100 dollars, to be void upon this condition: Whereas said A. L. Dyke Automobile Supply Co. and H. B. Lemon have appealed from the judgment of Anthony A. O'Halloran, a justice of the peace of the Fifth District, of the city of St. Louis, in an action between A. D. Evans, plaintiff, and A. L. Dyke Automobile Supply Co. and H. B. Lemon, defendants.

"Now, if on such appeal, the judgment of the justice be affirmed, or if, on the trial anew, in the circuit court, city of St. Louis, Missouri, judgment be given against appellants, and they shall satisfy such judgment, or if their appeal shall be dismissed, and they shall pay the judgment of the justice, together with the costs of appeal, the recognizance shall be void.

"A. L. DYKE AUTOMOBILE SUPPLY CO.,

"A. L. DYKE, President,

"F. H. BRITTON.

"Attest and approved this 26th day of August, 1904.
"ANTHONY A. O'HALLORAN,

"Justice of the Peace of the Fifth District, City of St. Louis, Missouri."

This notice of the appeal dated August 26, 1904, was served on respondent, but the date of the service does not appear:

"A. D. Evans, plaintiff, v. A. L. Dyke Automobile Supply Co. (a corporation) and H. B. Lemon, defendant.

"Before A. A. O'Halloran, Justice of the Peace, Fifth District, City of St. Louis.

"To A. D. Evans, appellee:

"You are hereby notified that we have taken an appeal from the judgment of the justice in the above-entitled cause, to the circuit court of the city of St. Louis.      A. L. DYKE AUTOMOBILE SUPPLY CO.,

"H. B. LEMON, Appellants.

"Dated August 26, 1904."

When the cause came on for trial in the circuit court, the attorney for the automobile company asked leave to amend the affidavit for appeal by inserting after the words "Roy Britton" in the body of the affidavit, these words: "As agent for and on behalf of the A. L. Dyke Automoblie Supply Company." The reason given in the motion was that Britton had authority to make the affidavit for the automobile company alone and the words asked to be inserted were omitted from the affidavit by Britton's inadvertence; it being his purpose to appeal only on behalf of the automobile company. That this was Britton's purpose is said, in the motion, to be proved by the appeal bond having been executed only in the name of the automobile company as principal. In support of the motion Britton testified that he was a lawyer and also interested in the Dyke Automobile Company; that he represented said company at the trial of this case before the justice of the peace; that Lemon did not appear at the trial and he was not Lemon's attorney; that Lemon had an attorney by the name of Cleveland. The witness did not state whether Cleveland was retained prior or subsequent to the trial before the justice; but some of his testimony looks like it was afterwards. Britton further testified that his reason for making out the affidavit for both the automobile company and Lemon, was that the

latter intended to appeal and, therefore, the affidavit ought to read in the name of both parties; that he also prepared the bond reciting that both the automobile company and Lemon had appealed and providing that if, on such appeal, the judgment of the justice was affirmed, or, if on the trial in the circuit court, the judgment should be given against appellants, and they should satisfy the judgment, or if their appeal was dismissed, and they should pay the judgment of the justice, together with the cost of the appeal, the recognizance should be void. The purport of Britton's testimony is that he was insisting that Lemon should get a bondsman to sign the appeal bond and supposed for some time he would; but Lemon found it impossible to do so and finally notified Britton of his inability. The precise date when this information was given to Britton was not stated, but in that connection Britton swore as follows:

"Q. Isn't it a fact Mr. Britton, that you first sought to have Mr. Lemon secure a bondsman for himself? A. I sought right along to get Mr. Lemon to secure a bondsman for himself.

"Q. And isn't it a fact that he finally reported to you that he couldn't secure a bondsman? A. Not until after I served that notice and after our bond was filed."

He further swore he did not tell Lemon he had taken an appeal for him, but it was understood Lemon was to appeal, that he urged Lemon to appeal because he regarded him as an important witness for the company. Britton was surety on the bond and in a colloquy between counsel for appellant and the court, the court said: "This man Britton has a right to have his liability limited to the party for whom he signed the bond. You can't make him liable for some one for whom he never intended to become liable." When the cause was called for trial in the circuit court, Lemon appeared with counsel and announced that he was there to make

defense. After the amendment had been allowed, the circuit court treated Lemon as no longer in the case and excluded evidence to show admissions against interest made by him.

1. Our opinion is that error was committed in holding Lemon had not appealed from the justice's judgment. It is true the affidavit for appeal did not recite that the affiant Britton was agent for either Lemon or the automobile company; but if it appeared by other evidence that he was agent for one or both of the defendants, the appeal was good for the one he represented. [Kearney v. Lindell Ry. Co., 15 Mo. App. 576; Ring v. Glass Co., 46 Mo. App. 374; Burton v. Collins, 3 Mo. 170; Debolt v. Railroad, 123 Mo. 496, 514, 27 S. W. 575.] And if there had been no affidavit at all, or no question had been raised about the sufficiency of the one filed, the jurisdiction of the circuit court was complete and the appeal could not be dismissed without affording an opportunity to file a good affidavit. [R. S. 1899, sec. 7072.] By the section of the statutes just cited, the same rule holds if no appeal bond, or an imperfect one, was given. We do not say reversible error occurred in permitting an amendment of the affidavit to describe Britton as agent for the automobile company; for such he was. The error was in the ruling that Lemon was not before the court; a ruling which precluded judgment being entered against him in the circuit court and tended to complicate appellant's rights on the appeal bond filed with the justice. Britton may not have been attorney for Lemon in the justice's court, but his own testimony shows he was clothed with authority to take an appeal for Lemon. It appears, too, that Lemon recognized his authority in the circuit court, for he appeared there with an attorney to contest the case. The precise point on which it is claimed Lemon took no appeal is that it was not Britton's intention to file the affidavit and bond in the form they were written and

purporting to be in Lemon's behalf, unless the latter would procure a bondsman, which he failed to do. But Britton swore Lemon did not inform him of his (Lemon's) inability to procure a bondsman until after the bond had been filed and notice of the appeal served. In view of this testimony, it is far from being clear enough that Britton was not representing Lemon, or intending to appeal for him, to summarily dispose of the matter on a motion preferred by the automobile company, which could not be prejudiced on the trial by treating Lemon as in court. If Evans, the appellee in the appeal from the justice's judgment, acquiesced in the validity of Lemon's appeal and raised no question about either the affidavit or the bond, and if Lemon himself acquiesced in it and appeared to defend the case without challenging Britton's authority to represent him, we know of no rule allowing his co-appellant to defeat his appeal. A hardship would be imposed on Evans by such a procedure. An appeal apparently valid and supported by a bond had been allowed in Lemon's favor; thus preventing Evans from taking out execution against him. Yet the automobile company, whose attorney and officer had brought about this condition, is permitted to set aside Lemon's appeal as void. If a mistake of fact or inadvertence occurred which would make the automobile company and Britton liable on the appeal bond for the performance by Lemon of the judgment given against him by the justice, when in reality the assumption of such a liability was not intended, the remedy, if there is one, is in equity to be relieved from that liability on the bond, so far as it arises from mistake.

2. At the conclusion of appellant's evidence in the circuit court, a demurrer was sustained to his case on the ground that Lemon acted beyond the scope of his authority in what he did about appellant's machine. To make this point clear, it is necessary to recite the facts

as given by the witnesses. Appellant swore he wished to sell his machine and called the Dyke Automobile Company by telephone; that Britton came to the telephone and appellant told him he (appellant) had an Oldsmobile to sell and asked $400 for it; that Britton told appellant to send the machine over to the automobile company's garage and he (Britton) would see what could be done with it; that the company bought and sold machines; that pursuant to this direction appellant sent the machine to the garage by his brother, Walter Evans. The latter testified to taking the machine to the garage on Saturday afternoon, July 19, 1904. When he reached the entrance of the garage, and before going in, he asked some men about the place for Britton or Dyke and was told they were both absent. He was directed to a man in the office who gave his name as Lemon, and explained to Lemon that he had brought the machine pursuant to a conversation between Britton and appellant. What happened next is thus related by Walter Evans:

"I went in the office and saw a man sitting at the desk engaged in looking at some papers, and I asked him if he was Mr. Lemon, and he said he was, and I told him I had been directed to him. I told Mr. Lemon my brother sent me over with his machine and he had a communication over the 'phone with Mr. Britton in regard to a sale of it, and I had brought it over there and put it into their hands and he said: 'Where is the machine.' And I says: 'Out at the curbing of the street.' And he looked at it and he asked me what my brother asked for it, and I said he was asking five hundred dollars, but he would take four hundred dollars, but didn't want to go any less than that. I told him he wanted four hundred dollars, net, and he said: 'The machine is well worth that;' and that we would not have any trouble selling it at that price; and we tried the engine and different parts, and it was in good

condition, and he told me to run it inside, and I ran it in the garage. He (Lemon) told me to come to the desk, and I gave him my name and my brothers, and he scratched his head, and said: 'I have a prospective buyer for this, but;' he said, 'I don't keep open on Sunday,' and he said, 'you live in the same neighborhood I do; suppose you take the machine home, and let me call for it to-morrow morning about ten o'clock?' And I said that was perfectly agreeable, and I took the machine home, and about a quarter to ten Sunday he came and got it and went away, and that was the last I saw of Mr. Lemon."

Regarding the duties and authority of Lemon as an employee of the automobile company, one of the office clerks testified, in effect, that Lemon was in the office of the company as an order clerk, answered and read the correspondence and did anything in the line of sales when called on to assist; attended to matters when Dyke and Britton were away from the place; attended to customers, answered questions, gave instructions to the office people, and was called the manager of the office; but the witness did not know whether he had any authority outside the office or not. It seems that Dyke, and Britton, who were the main officers of the company, had been at the garage Saturday morning, but had left about noon and there was no one but Lemon about the place to give orders. The witness further testified that he would take Lemon's orders the same as he would Dyke's; that Lemon "gave orders along a certain line; for instance, if an order for a machine came by mail, he would say: 'We will let that go, or we will hold it;' that witness knew Lemon had authority to give orders to the office employees; witness knew the company sold automobile supplies and also sold machines for people on commission; knew Lemon bought parts of machines under Dyke's instructions; that he did not have authority to give orders in the garage;

that witness had never known him to give orders except in the office; that he did not give orders to the mechanics. The testimony further showed that after the machine had been parted with by appellant, under the circumstances narrated, he never got it back. The company contends it is not liable for the loss of the machine; a proposition which might call for attention from several points of view: that the machine never passed into the company's possession; that Lemon acted without the scope of his authority in receiving it, if in fact, he did receive it; outside his authority in leaving it in the custody of Walter Evans, after receiving it for the company, and particularly in using it for a pleasure trip on the following Sunday. In view of the testimony to show that appellant had theretofore arranged with Britton, one of the chief officers of the company, to receive the machine to sell, and Walter Evans' testimony that he told Lemon of this arrangement, we hold the latter lawfully might take charge of the machine for the company. An agent or servant may accept delivery of an article in behalf of his employer when it is tendered pursuant to business usage, or a special contract. [Ford v. Mitchell, 21 Ind. 54; Trowbridge v. Cahpin, 23 Conn. 599; Moore, Carriers, 139.] If Lemon had no more authority than an ordinary employee, his receiving the machine into the garage when it was tendered in accordance with the contract previously made with the general manager, would constitute a good delivery to the company. But did he receive or accept it? All the facts we have bearing on that issue are given in the testimony of Walter Evans, and strongly incline to prove, perhaps do prove conclusively, that Lemon did not accept the machine on Saturday afternoon, but asked Evans to keep it at his home until the next morning when he (Lemon) would call for it. Evans acquiesced in this proposal. Now the question of difficulty right here is, whether there had been a delivery of possession

to Lemon for the company before this arrangement with Walter Evans was made, so that the company was bound for the care of the property. Delivery means relinquishing the possession and control of an article by one person and taking possession by another. It looks like what transpired amounted to a consent by Walter Evans to retain the machine until the next day and then turn it over to Lemon for the company. Lemon's statement that he had a prospective buyer, but the garage would not be open on Sunday, implied that he wished to exhibit the machine to the prospective purchaser, for which reason he did not want to put it in the garage and, hence, requested Evans to keep it. Perhaps different inferences might be drawn by reasonable minds as to whether the machine actually had passed into the possession of the company prior to the arrangement between Lemon and Walter Evans.

Granting without deciding, that a delivery had occurred, was the company responsible for the loss of the machine while Lemon was using it for a purpose of his own? There can be no doubt, we think, on this proposition. A master is responsible for the negligent or willful tort of his servant only when committed in the sphere of the servant's duty and while acting in the master's behalf. Judges have commented on the frequent difficulty of ascertaining whether or not a given tort was within the range of a servant's duties; but both on principle and authority it is plain that Lemon could not lay the automobile company liable for his negligence in handling appellant's machine, while using it for a purpose wholly detached from his employment. "If the act was done while the servant was at liberty from his service and pursuing his own ends exclusively, there can be no question that the master is not responsible; even though the injuries complained of could not be committed without the facilities afforded by the servant's relations to his master;" said the Supreme Court

in Garretlzeh v. Duencker, 50 Mo. 104, 108, quoting from a standard treatise on Negligence. [Shearman & Redfield, Negligence, sec. 63, and note.] Lemon's Sunday pleasure trip had no relation to his services as an employee of the company, and the latter's immunity from liability is settled by many decisions given on similar facts. An opinion which reviews most of the authorities will be found in Stone v. Hills, 45 Conn. 44; 29 Am. Rep. 635. [See, too, Storey v. Ashton, L. R. 4 Q. B. 476; Sleath v. Wilson, 9 C. & P. 607; Cormack v. Digby, Ir. Rep. 9 Com. L. Series, 557; Campbell v. Providence, 9 R. I. 262; Cavanaugh v. Dinsmore, 12 Hun 465; Bard v. Yohn, 26 Pa. St. 482.] In each of those cases the damage complained of was due to the negligence of a servant engaged in driving his master's team, or of a person using a team belonging to another with the latter's consent. But it appeared, too, that the injury was done while the person in charge of the team was using it on an errand of his own and not in connection with any duty he owed the owner; hence, the defendants were exonerated from liability. A case identical with the one in hand on the immediate point was recently decided by the Court of Appeal of England. [Sanderson v. Collins, 90 L. T. (n. s.) 243. King's Bench L. R. (A. C.) 1904.] The plaintiff, who was a coach builder, had taken defendant's vehicle to repair and loaned a vehicle to defendant while the repairs were being made. One day the defendant took a drive in the borrowed vehicle, which, on his return home, it was the duty of his coachman to put in the coach house and lock up. Without the defendant's knowledge, the coachman took the vehicle out during the night for a drive with some friends, and negligently drove it into a tramcar to its damage. On these facts the defendant was held not liable, on the ground that the coachman was not acting within the sphere of his duty, but for his own pleasure. Other authorities deciding the general principle involved are: Merchants

National Bank v. Guilmartin, 88 Ga. 797; Hart v. Maney, 12 Wash. 266, 269; Adams v. Cost, 62 Md. 264; 50 Am. Rep. 211; Wright v. Wilcox, 19 Wend. 343; Foster v. Bank, 17 Mass. 478; Maddox v. Brown, 71 Maine 432, 36 Am. Rep. 336; Walker v. Railroad, 121 Mo. 575, 26 S. W. 360; 1 Clark & Skyles, Agency, sec. 498.]

On the evidence contained in this record we hold that the learned circuit judge did not err in sustaining a demurrer to the evidence against the automobile company.

For the error in holding that the case was not appealed by Lemon from the justice of the peace, the judgment is reversed and the cause remanded. All concur.