GORDON v. TEXAS & PACIFIC MERCANTILE & MFG. CO. (No. 8449.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 21, 1916. Rehearing Denied Nov. 25, 1916.)

1. MASTER AND SERVANT ⬅302(2)—INJURIES TO THIRD PERSONS—LIABILITY OF MASTER.

The owner of an automobile who was not present at the infliction of the injury cannot be held liable except it be shown that the person in charge was not only the agent of the owner, but was at the time engaged in the business of his master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1218, 1219; Dec. Dig. ⬅302(2).]

2. MASTER AND SERVANT ⬅302(2)—INJURIES TO THIRD PERSONS — AUTHORITY OF SERVANT.

While authority to use an automobile in exceptional ways might be implied by circumstances which would warrant the inference that the employer knew of such uses, the commitment of a car to the custody and control of an employé for the special purpose of delivering merchandise would not alone authorize the conclusion that the employé was at liberty to use the car for other purposes.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1218, 1219; Dec. Dig. ⬅302(2).]

3. MASTER AND SERVANT ⬅332(4)—INJURIES TO THIRD PERSONS—TRIAL—INSTRUCTIONS.

In an action for injuries caused by an automobile driven by defendant's servant, where it appeared that the automobile was in the general control of the servant for commercial use during the daytime, and that the accident happened at night, while the servant, after his employment had finished, was taking persons having no control over him to a fire, the court properly refused a requested instruction that, if the machine was defective and dangerous to use upon the road at night, and that the defects and danger were within the knowledge, actual or constructive, of the defendant, and the driver was one of its employés, defendant would be liable for the consequences, even though the driver was not using the car in the business of his master or with his knowledge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1277; Dec. Dig. ⬅332(4).]

4. TRIAL ⬅252(8)—INSTRUCTIONS—EVIDENCE TO SUPPORT.

In an action for injuries caused by defendant's automobile driven by its employé, where there was no evidence of incompetency or recklessness of the driver or knowledge on the part of the defendant of such incompetency, an instruction that, if defendant owned the automobile and the driver had been employed regularly and was incompetent or reckless, and the incompetency or recklessness was known to defendant, and the driver was thereafter given control of the car, the retention of the driver under

such circumstances constituted negligence, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 603; Dec. Dig. ⬅252(8).]

5. EVIDENCE ⬅106(5) — INTOXICATION—ADMISSIBILITY.

In an action for damages caused by defendant's automobile, driven by its servant, where there was no evidence tending to show that the servant was habitually intoxicated or defendant ever knew or heard of his being in an intoxicated condition, testimony that the driver on one occasion had appeared intoxicated when he came to deliver merchandise to the witness was incompetent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 187; Dec. Dig. ⬅106(5).]

6. MASTER AND SERVANT ⬅330(3)—INJURIES TO THIRD PERSON—EVIDENCE—SUFFICIENCY.

In an action for damages caused by defendant's automobile while driven by its servant, evidence that the servant was acting outside the scope of his employment held sufficient to justify a verdict for defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1272; Dec. Dig. ⬅330(3).]

7. MASTER AND SERVANT ⬅330(1)—INJURIES TO THIRD PERSON—EVIDENCE—BURDEN OF PROOF.

In an action for damages caused by an automobile driven by defendant's servant, although proof that an automobile is being driven by a servant will support a finding of fact that he was employed in the business of his master, in the absence of countervailing proof, the burden of proof as a matter of law remains upon the plaintiff to establish the material allegations upon which recovery must rest, since while the weight of the evidence may, from time to time, shift, the burden of proof as to the essential elements of the plaintiff's cause of action does not.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1270; Dec. Dig. ⬅330(1).]

Appeal from District Court, Palo Pinto County; W. J. Oxford, Judge.

Suit by Mrs. R. N. Gordon against the Texas & Pacific Mercantile & Manufacturing Company. Judgment for the defendant, and plaintiff appeals. Affirmed.

Alexander, Baldwin & Ridgway, of Ft. Worth, for appellant. John W. Wray, of Ft. Worth, for appellee.

CONNER, C. J. Mrs. R. N. Gordon brought this suit in the district court of Palo Pinto county against the Texas & Pacific Mercantile & Manufacturing Company on February 15, 1915, for $25,000 damages because of personal injuries received by her on the night of March 24, 1914, in an automobile collision. She alleged that the defendant company was a corporation engaged in a general mercantile business at Thurber, Tex., and owned and operated an automobile truck that it used in and about its business and between the towns of Thurber and Mingus in hauling merchandise and transporting men between said towns and in protecting and looking after its property. She further alleged that on the night mentioned she, with her children and brother, was driving a one-

horse buggy along the public road from Mingus to Thurber, when she met the defendant's automobile truck, driven by one of its agents and servants, and that without fault on her part, and through the negligence of said servant, the automobile ran into the buggy, threw her out upon the ground, and seriously injured her, the particulars of which we need not here specify. It was alleged that the automobile truck at the time was defective in particulars set out in the petition, and "was, at the time of the accident, being used for defendant's business." It was alleged that the defendant was negligent in permitting said automobile to be used upon the public road at night with the defects specified, and that the machine in its condition was a dangerous one, which the defendant knew, or could have known by the exercise of ordinary care. As a further ground of negligence it was alleged that the defendant employed and permitted said car to be operated by a careless, incompetent, and reckless driver. The defendant answered by general demurrer, general denial, and plea of contributory negligence. Upon the trial, which was on October 12, 1915, the case was submitted to a jury upon special issues, in answer to which the jury returned the following verdict:

"We, the jury, find that Charley De Witt (the driver of the automobile at the time in question) was not engaged in the defendant's business at the time of the accident, and was not acting within the scope, nor apparent scope, of his employment."

The jury had been instructed that in event they so answered that isssue, other issues need not be considered by them, and thereupon the court entered judgment in favor of the mercantile company, from which the plaintiff has duly prosecuted an appeal.

Error is assigned to the refusal of the court to give the following special instruction:

"Gentlemen of the jury: You are instructed that though you may believe from the evidence that at the time of the accident in question the auto truck causing the accident was not being used for any business of the defendant, yet, if you believe from the preponderance of evidence that said car was owned by defendant, and that it was being driven by an employé of the defendant, and that said car was in a bad state of repair and defective, and that such defects or bad state of repair, if any, rendered said car a dangerous machine to use on the public road in the nighttime, and that defendant, or those of its agents or employés who had control and management of said car, knew, or by the exercise of ordinary care could have known, of such defective condition, if any, and knew of the danger to the traveling public incident to the operation of said car upon the public road in its defective condition, and that such use and operation of the car in such condition at said time and place was negligence, and that plaintiff was injured, and that such negligence of defendant, if any, was the proximate cause of her injuries, if any, then you will find for plaintiff."

It seems evident that the requested charge authorizes a recovery without a finding that the appellee company, through some authorized agent or source, knew, or by the use of due care should have known, that the driver of the car was using it for the purpose shown in the evidence. The charge proceeds upon the assumption, and appellant so urges, that if the machine was defective, as alleged, and as there was evidence to show, and that it was dangerous to use it upon the road at night, as was being done, and that said defects and danger were within the knowledge, actual or constructive, of the appellee company, and that the driver was one of its employés, then appellee would be liable in damages for the consequences, even though at the time in controversy the driver was not using the car in the business of his master, but for purposes of his own, or of others with him without any knowledge on the part of the master that it was at the time being so used.

The evidence substantially shows that De Witt, the driver, had for a number of years served the defendant company in the capacity of a driver of the automobile in question; that the automobile was used in the delivery of merchandise in and about the town of Thurber and on monthly trips to the town of Mingus, on the railroad a few miles away; that ordinarily deliveries of merchandise were made in the daytime, although there was evidence that occasional deliveries were made as late as 8 or 10 o'clock at night. De Witt had been furnished and kept a key to the garage in which the automobile was kept at night. The evidence is silent as to whether or not any other person had such a key. On the night in question De Witt completed his deliveries about 6:30 o'clock, housed his automobile, and thus completed his labors for the day. Some time later, between 8 and 9 o'clock, it was discovered that a fire was raging in the town of Mingus, at which point there is evidence tending to show that the defendant company owned some property, although its location and character seems not to be specified in the evidence. Upon the discovery of the fire several persons, including the chief of the fire department at Thurber, a cashier of the defendant company employed in its mercantile establishment, and perhaps one or more other employés of the defendant company induced De Witt, the driver, to go to the garage, bring out his automobile, and take a company of men, some 20 or 25, to Mingus to aid in putting out the fire. The auto was defective; it had poor lights, and possibly some defect in its steering gear, and on the journey the collision occurred of which the plaintiff complains, and the evidence leaves no doubt of her serious injury. The evidence was to the effect that Mr. Williams, one of defendant's vice presidents, and Mr. W. K. Gordon, its general manager, were the agents of the defendant company having authority and control over De Witt. It does not appear, however, that either of these agents knew on the night in question that De Witt had, or intended to take, the automobile out of the ga-

rage and make the trip to Mingus, nor is there any evidence tending to show that either of these officers ever knew of De Witt's so using the automobile in the nighttime for any like purpose. Nor does the evidence show that the chief of the fire department, or the defendant company's cashier, or physician, or other employé, that went to Mingus on the night in question, had any authority or control over De Witt whatever. Nor does the evidence show that it was within the scope of the duties of the driver named, or of any one of defendant's employés, who went to Mingus, to go there even in the protection of property belonging to the company. Under the evidence they certainly were not so directed on the night in question; or rather there is no evidence that they were so directed. The evidence further showed, however, that the defendant company owned the automobile truck, kept it in repair, and furnished the gasoline, oil, and all equipment for its use; and the evidence fails to show that any other of defendant's employés had been given custody or control over the automobile at either day or night. But Mr. Gordon, the general manager, testified without contradiction that:

"As driver, it was part of De Witt's duty to put the truck up at nights the same as it is the duty of the teamster to put his teams up at night and take them out in the morning. De Witt owed the company absolutely no duty after his day's work was over; after the day's work is done he is free as far as the company is concerned."

[1] Appellant's contention, in substance, is that the mere fact that the automobile was defective and dangerous for driving at night, and known to be so by the defendant, and that at the time it was being driven by one of defendant's servants, having been given power to take it from the garage, creates a liability on defendant's part for the consequences. We cannot approve so broad a ground of liability on the part of automobile owners. The authorities seem uniform to the effect that the owner of a car who was not present at the infliction of the injury cannot be held liable, except it be shown that the person in charge, not only was the agent or servant of the owner, but also was engaged at the time in the business of his master. See Hill v. Staats, 187 S. W. 1039, 189 S. W. 85 (No. 8416), by this court not yet officially reported; Christensen v. Christiansen, 155 S. W. 995; Reilly v. Connable, 214 N. Y. 586, 108 N. E. 853, L. R. A. 1916A, 954, Ann. Cas. 1916A, 656; Lotz v. Hanlon, 217 Pa. 339, 66 Atl. 526, 10 L. R. A. (N. S.) 202, 118 Am. St. Rep. 922, 10 Ann. Cas. 731; Slater v. Advance Thresher Co., 97 Minn. 305, 107 N. W. 133, 5 L. R. A. (N. S.) 599; Evans v. Automobile Co., 121 Mo. App. 266, 101 S. W. 1132; Patterson v. Kates (C. C.) 152 Fed. 481; Reynolds v. Buck, 127 Iowa, 601, 103 N. W. 946; Clark v. Buckmobile Co., 107 App. Div. 120, 94 N. Y. Supp. 771; Howe v. Leighton, 75 N. H. 601, 75 Atl. 102; Jones v. Hoge, 47 Wash.

663, 92 Pac. 433, 14 L. R. A. (N. S.) 216, 125 Am. St. Rep. 915; Lewis v. Amorous, 3 Ga. App. 50, 59 S. E. 338.

[2] If it be conceded that the automobile under consideration was defective, and that it was dangerous to drive it upon the public roads at night, as the evidence tends to show, yet something more is required in order to create liability than a mere showing that the automobile was owned and furnished by the defendant and had been placed in the general control of the driver for a special purpose. There is nothing in this case to show that the driver's control was general in the sense that he had the right or authority to take or use the car for any purpose other than for the delivery of merchandise, or to go to Mingus once a month with guards to get the money with which to pay the defendant's employés. The commitment of the car to the custody and control of De Witt for these purposes will not alone authorize the conclusion that he was at liberty to use the car in visiting fires or places of amusement in a neighboring village. Of course authority to so use the car might be shown by direct evidence, or might be implied even by proof that De Witt had used the car for such purposes with such frequency as to warrant the inference that some agent of the defendant corporation having control knew, or by the exercise of ordinary care could have known of, and consented to, such exceptional uses of the car by De Witt. But the record discloses no such proof, direct or circumstantial. The evidence, indeed, negatives any such state of affairs. Gordon, the general manager of defendant corporation, testified that he never knew De Witt to use the car later than 8 o'clock at night. One or more witnesses testified that they had seen De Witt driving the car to Mingus, visiting picture shows, etc., but the number of times, or the time of day or night that such uses occurred is not made to appear. Nor has it been made to appear that any officer of the defendant corporation having control over De Witt over the car in question knew of any such use.

[3] There is also testimony that when De Witt was urged to take the car out on the night in question, he replied that he was not authorized to do so without the consent of Williams, the vice president, or a Mr. Creighton, but nevertheless finally went to the garage and took the car out, and we find no evidence that either Williams, Creighton, Gordon, or other agent of the defendant company having any right of control over De Witt, or over the car, either knew of or consented to De Witt's taking, and to the consequent use of, the car on the night in question; and, while there is evidence that the defendant company owned the property in Mingus, the evidence fails to show with any degree of certainty that it was in danger, or that it was any part of the duty of De Witt, the driver of the car, or of any one of defend-

ant's employés who accompanied him, to go to the fire in question in an effort to save property of the defendant corporation. Indeed, the vital issue, as submitted by the court, and the answer thereto as given by the jury, seems broad enough to preclude all reasonable inferences arising from the evidence upon which a judgment in appellant's favor could be predicated. We, accordingly, find that the court properly refused the special charge requested.

[4] Error is also assigned to the rejection of a special charge, to the effect that if the defendant owned the automobile in question and De Witt had been employed as a regular driver, and that De Witt was an incompetent or reckless driver, and that such incompetency or recklessness was known to the defendant, and De Witt thereafter given the management and control of the car and to drive the same, and that the retention of the driver under such circumstances constituted negligence, they would find for the plaintiff. We find but little, if any, evidence of substantial weight tending to show incompetency or recklessness on the part of the driver, De Witt, or that, if any such incompetency there was, such incompetency was known to any agent of the defendant corporation having authority to act. For these reasons, and for reasons above given in disposing of the first assignment, the second assignment, complaining of the action noted, will be overruled.

[5] Complaint is also made of the exclusion of the testimony of Henry Bernard, to the effect that one night about 11 o'clock about one month before the accident in question, De Witt came to his, the witness' house, to deliver some feed stuff, and that he appeared to be intoxicated at the time. The testimony was offered on the issue presented in the pleadings of De Witt's incompetency, but we find no error in the court's ruling in this respect. We do not understand that an isolated condition of the kind indicated is competent proof to establish incompetency, and there is no evidence tending to show that De Witt was habitually intoxicated, or that the defendant, through any authorized agent, ever knew or heard of his being in an intoxicated condition.

[6] The remaining assignments complain that the verdict and judgment are not supported by the evidence, and that the court erred in placing the burden of proof upon the plaintiff on the issue, among others, of whether or not the driver, De Witt, acted with authority in driving the car. What we have already stated of the evidence we think sufficiently disposes of the contention that the evidence is insufficient to support the verdict and judgment, and several authorities have been cited to the effect that when it is shown that when an injury has been negligently inflicted by a servant of the owner of the car, it will be presumed, in the absence of countervailing proof, that the servant was at the time employed in the business of his master. See Studebaker v. Kitts, 152 S. W. 464; Long v. Nute, 123 Mo. App. 204, 100 S. W. 511; Birch v. Abercrombie, 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59; Kahn v. Home Telephone & Telegraph Co., 78 Or. 308, 152 Pac. 240.

[7] We think, however, that the inference arising from the facts stated are, properly speaking, inferences of fact, and not of law. That is, it may be true that upon proof that the car of an owner is being driven by one of his servants is sufficient as a matter of evidence, in the absence of explanation that the driver at the time was engaged in the master's business, and would support a finding to that effect. The inference, however, we think is one of fact. The burden of proof as a matter of law, as we understand the rule, yet remains upon the plaintiff to establish upon the whole case the material allegations upon which his right of recovery must rest. While the weight of the evidence may, from time to time, shift, the burden of proof as to the essential elements of the plaintiff's cause of action does not do so. See Clark v. Hills, 67 Tex. 141, 2 S. W. 356; Railway Co. v. Johnson, 92 Tex. 591, 50 S. W. 563. We are therefore of opinion that the court's charge was correct. A contrary charge, indeed, would, under the circumstances of this case, have been misleading, and the evidence to the effect that, when the car was housed for the night, De Witt's duties were ended seems undisputed. His ordinary hours of employment in the business of the master began in the morning, and, with the exception of a few instances shown, ended in the evening. On the night in question it is undisputed that his duties for the day had ended. His car had been housed, and the use thereafter made was in the night and exceptional, and, as it seems to us, one of the vital propositions of the plaintiff's case was to show that at the time of the accident in question De Witt was engaged in the business of his master, or at least acting within the apparent scope of authority given him by the master. The plaintiff so alleged, and, as we conclude, the burden was upon her to support the allegation. But even if mistaken in this view of the law, we consider the evidence on the issue so preponderating in appellee's favor as to render the error of the court, if any, without probable prejudice.

On the whole, we conclude that all assignments of error must be overruled, and the judgment affirmed.