## HADLEY

### v.

## INTERNATIONAL–GREAT NORTHERN R. CO. et al.

### No. 6720.

Court of Civil Appeals of Texas.
Texarkana.

May 6, 1954.

Rehearing Denied June 3, 1954.

Gallagher, Francis, Wilson, Bean & Berry, Dallas, Hatchell, Storey & Hatchell, Longview, for appellant.

Roy L. Whitehead, Longview, Hutcheson, Taliaferro & Hutcheson, McGregor & Sewell, Ben G. Sewell, Burke M. Martin, Houston, for appellee.

FANNING, Justice.

Earl Hadley sued defendant railroad company and Guy A. Thompson, its trustee,

for personal injuries, alleging that he was struck and injured by a switch engine of defendants. Motion for instructed verdict of the railroad company was sustained and motion for instructed verdict of the trustee was overruled.

The jury in response to special issues found that Hadley was not struck by a switch engine of defendant trustee; that defendant did not fail to keep a proper lookout for Hadley; that although defendant failed to ring the bell on the engine, etc., and failed to sound the whistle, etc., that such failures were not proximate causes of Hadley's injuries; and that he did not occupy a position of peril, etc. The jury further found that Hadley did not keep a proper lookout for trains on "Industry track," that he did not exercise ordinary care, etc., in listening for trains on "Industry track," etc., that on the occasion in question Hadley failed to exercise ordinary care for his own safety that his failure to use one of the regular crossings was negligence and that each of these failures were proximate causes of his injuries. The jury also found that Hadley's injuries were not the result of an unavoidable accident. The court entered a take-nothing judgment in favor of defendants and Hadley has appealed.

Appellant presents twelve points. Ten of these points relate to the admissibility of the testimony of defendant's witness William C. Frank who testified to the effect that plaintiff Hadley was fired by reason of drunkenness while in the employment of Merritt Tool Company (a former employer) about two months prior to the time Hadley alleges that he was struck by defendant's engine, and two of those points relate to the cross-examination of appellant Hadley as to whether he was fired for drunkenness while in the employment of Merritt Tool Company. By his twelve points appellant presents numerous objections to this testimony which are in the record, and which sufficiently raise various questions as to the admissibility thereof.

■ By way of background to a consideration of the admissibility of the evidence in question, we relate the following facts: There were no eyewitnesses to the alleged collision other than appellant; he was found beside the railroad tracks of defendant in an injured condition when the police were called on to investigate. Hadley claims that he had been struck by a switch engine while afoot. The police found a partially emptied bottle of wine about five feet from the appellant and at least two of the officers testified that they smelled an alcoholic liquor (or wine) on the appellant's breath, but due to his injuries could not say that he was drunk. (The trial court correctly concluded that the evidence was not sufficient to show that appellant was drunk at the time of his injuries and correctly refused to allow appellee to attempt to show that Hadley was an habitual drunkard and that he had been arrested numerous times for drunkenness in Kilgore, none of which was permitted to go before the jury.) However the trial court permitted the introduction of the evidence in question (of the witness Frank and cross-examination of Hadley referred to above) for the purposes of impeachment. Appellant contends that the evidence (of the witness Frank and cross-examination of Hadley, referred to above) was not admissible for any purpose, highly prejudicial, immaterial, hearsay, did not involve moral turpitude, not proper impeachment, that no proper predicate had been laid for same, etc., and for other reasons set out in appellant's points.

Appellant, among other cases, cites Gordon v. Texas & Pacific Mercantile & Mfg. Co., Tex.Civ.App., 190 S.W. 748, writ refused, which holds that testimony which shows that a person was intoxicated about one month before an accident, was not competent proof to establish incompetency, and that there was no evidence in that case to show that said person was habitually intoxicated, or that his employer (the defendant) ever knew or heard of his being in an intoxicated condition. Tripp v. Watson, Tex.Civ.App., 235 S.W.2d 677, holds that the record of plaintiff's conviction for driving while intoxicated on an occasion several months prior to the date of the

collision was properly excluded, particularly in absence of competent evidence showing that plaintiff was intoxicated on the occasion of the collision, and that the record of plaintiff's conviction therefore was not admissible for impeachment on immaterial matters.

Appellee, among other things, contends that the impeaching testimony of the witness Frank was not with respect to an immaterial or collateral matter but that it was material on the issue of appellant's earning capacity and alleged previous good work record.

Appellant's witness B. F. Enochs testified that he was a former employer of the appellant and that the appellant "had done his work fine; he is a good hand, as good a man as I ever had." Appellant also testified in detail with respect to his history of prior employment. We quote from the testimony developed upon cross-examination of appellant, as follows:

"Q. And who was it you worked for before you went to work for the Shore Sales Company? A. Merritt Tool Company. * * *

"Q. Are they located in Kilgore? A. Yes, sir.

"Q. Now, did you voluntarily leave that employment or did you get fired? A. No, sir, I got fired.

"Q. Why were you fired? A. Confusion over an electric motor. * * *

"Q. Did it have anything to do with your reporting to work one day drunk?

"Mr. Francis: We object to that as wholly immaterial.

"A. I never did report drunk.

"Q. You didn't? A. No, sir.

"Q. Who discharged you? A. Mr. Easley. * * *

"Q. What reason did Mr. Easley give you for discharging you? A. Well, he come and moved me off a job I had been on for four months straight and I had did my work, and he came back one morning, told me, said, 'You go back yonder, start to work on that big electric motor back there.' I said, 'What's wrong with the job I'm on?' Well, he said, 'You heard what I said.' And I told him that I didn't think that suited me.

"Q. Did he accuse you of being drunk or drinking? A. No, sir, he didn't.

"Q. You sure of that? A. I am sure of that."

We quote from the testimony of appellee's witness William C. Frank, Plant Director of Merritt Tool Company, as follows:

"Q. Do you recall that Mr. Hadley's employment was terminated? A. Yes, sir.

"Q. Do you recall approximately when? I don't mean the precise date, if you don't know. A. I can't tell you the exact date. * * *

"Q. What was the reason for the termination of his employment?

"Mr. Francis: We make the same objection, immaterial.

"The Court: Overrule.

"Mr. Storey: That would be a conclusion, if the court please.

"The Court: Overrule.

"A. We were at that time and are now engaged in the construction of a maintainer for the Air Force. The Air Force provides * * *

"Mr. Francis: If the court please, that is not responsive to the question asked.

"The Court: I sustain the objection.

"Q. Just give the reason why the employment was terminated, Mr. Frank. A. He was discharged on complaint of the inspector for drunkenness.

"Mr. Francis: We object to that, it surely is hearsay.

"The Court: I sustain the objection as to the complaint.

"Mr. Francis: We ask the jury be instructed not to consider if for any purpose.

"The Court: Gentlemen, you will not consider it for any purpose.

"Q. Mr. Frank, what are the facts as to whether or not Mr. Hadley was fired for drunkenness?

"Mr. Francis: I object to that as leading.

"The Court: Overruled.

"A. Would you repeat that question, please sir?

"Q. What are the facts as to whether or not Mr. Hadley was fired for reasons of drunkenness? A. He was.

"Mr. Sewell: That's all."

In 13 Tex.Jur., Damages, sec. 232, p. 398, it is stated: "The age, health, habits of industry, sobriety and economy of the plaintiff are legitimate matters of inquiry to enable the jury to determine the pecuniary loss incident to the injuries alleged." In Cameron Mill & Elevator Co. v. Anderson, 98 Tex. 156, 81 S.W. 282, 283, 1 L.R.A., N.S., 198, affirming 34 Tex.Civ.App. 105, 78 S.W. 8, a personal injury case, it is stated: "If the plaintiff be afflicted in mind or body, or if he be indolent, drunken, and thriftless, the defendant ought to be permitted to prove the fact, so as to show that his earning capacity is not that of a person of ordinary endowments, mental or physical, and of ordinary habits. So, if he be strong of mind and body, and sober, industrious, and economical in the use of his money, these facts throw light upon his earning capacity, and he ought to be allowed to establish them by evidence." To the same effect is the case of Houston & T. C. Ry. Co. v. Cowser, 57 Tex. 293. Also see the case of St. Louis Southwestern R. Co. of Tex. v. Bryson, 41 Tex.Civ.App. 245, 91 S.W. 829, with reference to impeaching testimony contradicting evidence to the effect that a plaintiff in a personal injury suit was not lazy and shiftless.

■■■ As correctly held by the trial court, the evidence in question clearly was not admissible for the purpose of showing that the appellant was drunk on the occasion of his injuries, nor was it admissible on the theory that it was a misdemeanor offense involving moral turpitude (which it did not involve). We are in accord with the numerous authorities cited by appellant to this effect. Appellant has also cited numerous authorities which hold that a witness cannot be impeached on immaterial matters with which we are in accord. However irrespective of whether this isolated incident of testimony as to whether Hadley was fired from his previous employment by reason of drunkenness was admissible in evidence for the limited purpose of impeachment (as held by the trial court) on the issue of plaintiff's earning capacity and ability to secure and retain employment, viewing the record as a whole we think that the admission of this evidence, whether correct or not, was not calculated to cause and that it probably did not cause the rendition of an improper judgment in this case, and that under Rule 434, Texas Rules of Civil Procedure, this case should be affirmed, and especially is this true by reason of our next holding that appellant was guilty of contributory negligence as a matter of law.

■■ We are of the further opinion that this cause should be affirmed because appellant Hadley (under his own testimony) was guilty of contributory negligence as a matter of law in stepping directly in front of the approaching engine on a straight track in the daytime without looking in the direction from which he said the engine was approaching, and we sustain appellee's second counter point raising this matter.

Hadley claimed he was struck by a switch engine of appellee in Kilgore, not at a regular crossing, while walking across "Industry track," between the last of six tracks of appellee. Hadley testified that he knew he was walking over railroad property but claimed that the public frequently crossed over in this area and that there was a footpath across there, and the evidence

also showed that pedestrians sometimes crossed over the tracks. Hadley had used the regular street crossing many times and knew that trains passed over the crossing frequently. In addition he testified:

"A. I have crossed there lots of times.

"Q. And you know trains come along there at all times? A. Yes, sir, they do.

"Q. You know that, you wouldn't think of walking across there without looking for a train, would you, Mr. Hadley? A. No, sir.

"Q. You might get hit by one, you know that, don't you? A. Yes, sir.

"Q. So every time you use that crossing you look, don't you, for trains? A. Yes, sir.

"Q. And you have used it many, many times during the years that you have lived in Kilgore? A. I have crossed there lots of times."

Hadley estimated the time of the alleged accident to be at 3:30 p. m., and testified that as he walked across the tracks he looked in both directions for trains until he came to the last track. He testified that he saw no trains on the first five tracks he crossed. When he reached the last track (Industry track) where the alleged accident occurred, he testified that he stepped down directly in front of the approaching engine, within less than two feet of it when he saw the engine for the first time. Asked as to whether he looked for trains approaching from that direction he said: "I never looked." We quote from his testimony further, as follows:

"Q. Then that brought you to the one next to the warehouse? A. That runs along by the supply house, yes, sir.

"Q. And you didn't see any there? A. No, sir, not until I stepped down in front of it.

"Q. When you got up to that last track there, did you look to your right? A. To the last track next to the supply house?

"Q. Yes, sir. A. No, sir, I never looked.

"Q. You didn't look? * * *

"Q. All right, sir. Now, you say you had been looking for trains as you crossed all those tracks but you got to this last one and you didn't look for trains, is that what you are swearing to? A. Well, in other words, I didn't hear nothing and I didn't see—

"Q. I didn't ask you about hearing. I'm asking you about seeing and looking now, Mr. Hadley. You testified when you got to the last track you didn't look for trains, didn't you? A. Well, I looked back to the street.

"Q. You looked back, is that what you mean? A. Yes, sir, east.

"Q. East? A. Yes, sir.

"Q. But you didn't look to your right which would be west? A. I had my hand up over my eyes like this (indicating).

"Q. I'm not asking you where you had your hand, I am asking you if you looked? A. No, sir, I did not.

"Q. You did not. So that train or that engine, would you say, that struck you, was within two feet of you approximately, when you stepped down between the two rails of that last track, is that right? A. It was right on me, yes, sir.

"Q. All right. So the truth of the matter is when you were standing at that railing just before you stepped over there, that engine would have to have been right there at you if it was within two feet of you when you stepped down there between the two rails isn't that right?

"Mr. Francis: That's argumentative, your honor, please.

"The Court: I overrule your objection.

"Mr. Francis: All right. A. It was right on me before I even saw it * * *.

"Q. As I understand your testimony, you stepped down between these two rails

so that the instant you were between those two rails, you looked up and back west for the first time you saw this locomotive within about two feet of you, is that right? A. I hadn't ever taken my hand down from over my eyes until I could feel the vibration of it, that's the only thing that I had noticed.

"Q. You were standing there between the rails the first time you saw the locomotive, is that right? A. No, sir, I wasn't standing.

"Q. What were you doing? A. I hadn't never stopped moving.

"Q. Hadn't stopped moving? A. No, sir.

"Q. Between the time you moved in front of this locomotive between the rails was the first time you saw the locomotive, is that right? A. Yes, sir, when I stepped down that little—there's about a foot and a half drop.

"Q. Yes, sir, the drop where this track is located that parallels or runs alongside the warehouse, isn't that right?

"Q. You didn't see the train until you stepped down that incline, is that right? A. Until I stepped down between the two rails.

"Q. When your body got in between the two rails is the first time you saw that locomotive? A. That's right.

"Q. That's right? A. Yes, sir.

"Q. You are willing to swear to that and stick to it. All right, Sir. A. Yes, sir."

■ There were no eye witnesses to the alleged accident other than appellant. The railroad employees testified that they never saw Hadley, operated no train or engine over the track in question at the time of the alleged injury and knew nothing of appellant's claim that he had been injured until they heard of the claim the next day. In J. R. Watkins Co. v. King, Tex.Civ. App., 83 S.W.2d 405, 407, it is stated: "When a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony and cannot successfully complain if he is nonsuited or the court directs a verdict against him." This testimony was not subsequently modified or changed by Hadley.

We also hold that the evidence did not raise the issue of discovered peril. Galveston, H. & S. A. R. Co. v. Price, Tex. Com.App., 240 S.W. 524.

In Galveston, H. & S. A. R. Co. v. Price, Tex.Com.App., 240 S.W. 524, 526, where a pedestrian while reading a newspaper and without looking up walked directly into the path of a train, it is stated: "The specific question here presented is whether one who in the possession of his faculties steps immediately in front of a moving train, the approach of which is unobstructed from his view, and which could be seen and heard by him by the use of his ordinary faculties or by taking any precautions whatsoever, is guilty of contributory negligence as a matter of law when he fails to use his ordinary faculties and as a result thereof is injured. There are several cases by our Supreme Court in which this precise question has been adjudicated, in each of which the answer was in the affirmative."

In Sabine & E. T. Ry. Co. v. Dean, 76 Tex. 73, 13 S.W. 45, 46, where the deceased pedestrian was struck and killed by a train, there was evidence that because of the noise of the mill nearby that he might not have been able to hear the train, but it was undisputed that there was no obstruction to his view and that if he had looked he could have seen the cars and after noting the testimony of an eyewitness to the effect that the deceased looked in one direction but not in the other direction from which the cars came, the court stated: "This evidence is not contradicted. But one conclusion can be drawn from it; and that is that, when there was nothing to pre-

vent his seeing his danger, he heedlessly stepped upon the track at the very moment of the collision. It may be conceded that the manner of propelling the cars was, under the circumstances, an act of negligence on the part of the defendant; and yet it must be held that the deceased exercised no care, and that his own want of it was the immediate cause of his injury. * * * The fact that, on account of the noise of the mill, he could not hear the approach of the cars, cannot be held to excuse him from the duty of using his eyes to see them. If anything, it emphasized that duty. We think the defense of contributory negligence was sustained by the evidence, without there being anything to the contrary."

In International & G. N. R. Co. v. Edwards, 100 Tex. 22, 93 S.W. 106, the Supreme Court held that the plaintiff was guilty of contributory negligence as a matter of law. In that case the deceased was struck while walking over a public crossing at night. There was evidence that the whistle was not blown or the bell rung on the train as it approached the crossing. The train was plainly visible by its electric headlight for more than a mile and its approaching noise was plainly audible. The court noted that: "Plaintiff admits that, before stepping on the track, he neither looked, nor listened for the train, although he was familiar with the crossing * * *; that he could have seen and heard it, had he done so."

In Texas & N. O. R. Co. v. Burden, 146 Tex. 109, 203 S.W.2d 522, 529, our Supreme Court in a similar situation held the deceased guilty of contributory negligence as a matter of law in walking across in front of a train, and stated: "Where one who uses a railroad crossing exercises no care whatever for his own safety, he is guilty of contributory negligence as a matter of law."

In the recent case of Gifford v. Ft. Worth & D. C. Ry. Co., Tex.Sup., 249 S.W.2d 190, our Supreme Court held that a pedestrian's contributory negligence was for the jury under the facts of that case,

but in that case the plaintiff testified that he stopped, looked and listened before going upon the tracks. In the case at bar Hadley testified that he did not look in the direction from which the engine came that struck him until he had already stepped on "Industry track." The Gifford case is clearly distinguishable from the case at bar.

The judgment of the trial court is affirmed.