SOAFA TOLEAFOA and FRANCIS NANSEN, Plaintiffs

v.

TAU SIOKA, AILUA LOTONIU, and AMERICAN
UNDERWRITERS INSURANCE CO., Defendants

High Court of American Samoa
Trial Division

CA No. 51-84

July 17, 1987

Before KRUSE, Associate Justice, and TAUANU'U,
Chief Associate Judge.

Counsel: For Plaintiffs, Albert Mailo
For Defendants, Roy J.D. Hall, Jr.

This is an action for damages for injuries
sustained arising from an automobile collision.
Plaintiffs Soafa Toleafoa and Francis Nansen were
passengers riding in defendant Ailua Lotoniu's
vehicle, which was driven by one Tau Sioka at the

time of the collision. Defendant American International Underwriters (A.I.U.) was at all relevant times the issuing carrier of an owner's insurance policy covering the subject vehicle, all in accordance with the Compulsory Insurance Act, A.S.C.A. 8 22.2001 et. seq. A.I.U. was named as a defendant herein pursuant to the right of direct action provision of the statute.

### FACTUAL BACKGROUND

Vehicle owner Ailua was, on or about February 20, 1983, involved with his matai title installation ceremony in the village of Aasu. In the course of preparing for the ceremony, he used his pickup truck to transport the required customary presentations for the village to Lualemaga's guest house, which was the venue for the occasion. At this time, the vehicle was driven exclusively by the owner.

As the ceremony commenced, Ailua had his vehicle parked to the rear of the guest house and at some time subsequent, one Setu asked Ailua for permission to use the vehicle to transport certain of the food presentations to another gathering within the village. Ailua agreed and handed his car keys to Setu.

As it turned out, Ailua's vehicle was not used, and meanwhile Setu retained the keys himself throughout most of the day.

At the conclusion of the ceremony, Ailua and others remained and slept in the guest house. Setu on the other hand went to his own home nearby to sleep and still had the car keys with him. These he placed under his bedding and he went to sleep.

Setu testified that he was later awakened by his wife, who said that Ailua had sent a young child for the keys, as he, Ailua, wanted to go home. Setu parted possession with the keys and went back to sleep.

In actuality, Ailua himself was still sleeping at this time, and it was Tau Sioka who had sent the child to get the keys. Tau Sioka took the vehicle and proceeded to drive towards the Pava'ia'i

-19-

direction[1], and as he left the village and proceeded to descend the hill at Tafeta/Mapusaga Fou, he stopped and offered a lift to certain pedestrians on the road, including the two plaintiffs.

Testimony had it that the vehicle continued for a distance in a usual fashion, but at a certain point on the incline it picked up speed and went out of control. Witness Apelu Soliai testified that he was one of the passengers picked up and was riding in the cab with the driver. He stated that the vehicle lurched forward and picked up speed, and he was told by the driver that the brakes had failed. The driver panicked and became stunned, so Apelu grabbed the wheel to attempt to keep the vehicle on the road while looking for an area appropriate on the roadside that would brake it. He steered towards somebody's taro plantation and was successful in bringing the vehicle to rest. In the process, plaintiffs Nansen and Toleafoa, who were riding in the bed of the pickup truck, were thrown from the vehicle and respectively suffered injuries. They were taken to the hospital with others.

Vehicle owner Ailua first learned of the whole incident when awakened towards the evening with the news that his vehicle had been involved in an accident. He testified that neither Setu nor Tau Sioka had driven the pickup truck before, nor were either of these individuals a part of his household. Testimony had it, however, that they were all members of the Lualemaga extended family. When asked why Ailua had given his keys to Setu, he testified that he knew Setu was a competent driver and he was told why and where the vehicle was needed. When he was further asked why he did not get back his keys when the vehicle was not being used, Ailua stated that at the time he was the principal at the matai installation and was entirely caught up in the whole affair. As events progressed he was unmindful of the fact that he had given his keys to Setu, and in the meanwhile the vehicle remained parked where he had left it.

---

[1] Tau Sioka's purpose in taking the vehicle was not made clear on the testimony, but as in most cases with auto accidents, Tau Sioka is not financially responsible and he has long departed the jurisdiction of this Court.

## LIABILITY

Upon the foregoing facts, which were not in dispute, plaintiffs state the issue as follows: whether, if Tau Sioka was negligent, his negligence would be imputed to Ailua as the owner of the vehicle.

Restated, the central issue here is whether the driver Tau Sioka was at the time an "additional insured" from the point of view of the Compulsory Insurance Act. That is, whether he had the express or implied permission of Ailua to operate the vehicle. There was no express permission in fact and therefore the inquiry focuses on "implied permission".

Plaintiffs submit that the case comes within the standard of Te'o v. Continental Insurance Co., CA No. 59-83. This was a case where implied consent was found in the following circumstances: vehicle owner, after forbidding her son from taking the family car, left the keys where the son could freely acquire it. The son took the car and got involved in an accident.

Plaintiffs here contend that, in a "family situation," the courts have been willing to more readily find "implied consent." That by not securing the vehicle keys and preventing access by family members, the owner is responsible for ensuing damage. Plaintiffs feel that in a family setting such as was the case here, Ailua did not do enough to secure the keys from Tau.

The attempt appears to be the extension of the family or household setting to the "aiga" or communal family situation. If we accept this position, there would be no end to the extension of vicarious liability in the Samoan community, with its widely dispersed communal ties.

The family or household setting situation was never meant to be a conclusive index of "implied consent." Rather, implied consent or permission was not something which the courts have confined alone to affirmative action on the part of the vehicle owner. This consent may be inferred from a past course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection which would, under the circumstances, signify consent. See generally Am. Jur. 2d, Automobile Insurance § 252. Accordingly a family relationship, with its attendant

-21-

familiarity, lends itself to an inquiry into past conduct and circumstances likely to show acquiescence, or lack of objection, tantamount to consent. But that degree of familiarity is not necessarily the case with extended family or aiga situations.

In this case, there was no evidence of any past use of the vehicle by Tau Sioka; nor of past permission by Ailua; nor of any past relationship between Ailua and Tau Sioka that could possibly give rise to inferences of acquiescence. To mention that Ailua and Tau are both members of the Lualemaga family in order to suggest implied permission is empty reference. The statute, while extending vicarious liability beyond common law limits, requires proof of "consent." The facts here are antithetical of consent. Tau obtained the keys through ruse and stratagem, and in fact converted the vehicle.

We do not find implied consent under the circumstances.

The Court has further explored the question whether liability should nonetheless be imposed on the vehicle owner, Ailua, for injuries arising from an accident attributed to the vehicle's faulty brakes, even though the pickup truck was being driven by Tau without Ailua's consent or control.

Those courts addressing the issue have held uniformly that liability cannot stretch as far as the owner if the owner did not expressly or implicitly sanction the injurious use. On the basis of that authority, Ailua is not liable to compensate the plaintiffs for their injuries.

The decision in Wellman v. Novak, 392 P.2d 377 (Ok. 1964), illustrates. The complaint there was levied against a railroad company and its employee. While fishing one night, the employee and a companion sought to help a motorist whose car had become stuck in sand. During the rescue mission, the employee's car also got stuck in sand, whereupon the employee got a ride to the railroad yard where he worked, took a company truck, returned to the two stranded cars, and freed them. While taking the truck back, however, the employee struck and killed the plaintiff's decedent, allegedly because of the truck's faulty brakes.

The Oklahoma Supreme Court held that the plaintiff could not recover from the railroad

-22-

company. When even a defective vehicle is driven without the consent or knowledge of its owner, and not on the owner's business, the court held, the owner cannot be made legally liable for a resulting accident. The court cited a C.J.S. entry and a number of cases to the same effect. 60A C.J.S., Motor Vehicles § 430; Gordon v. Texas & Pacific Mercantile & Mfg. Co., 190 S.W. 748 (Tex. Civ. App. 1916); Glenn Lumber Co. v. Fisher, 84 S.W.2d 282 (Tex. Civ. App. 1935); Felshi v. Zeidman, 126 A. 794 (Pa. 1919). Whether viewed as a product of bailment, causation, or object-of-duty principles, the rule seems firmly entrenched and operates here to deny the plaintiffs recovery from Ailua, and thus from his insurer.

Judgment is entered accordingly in favor of defendants Ailua Lotoniu and American International Underwriters.